# Mulherrin *versus* Delaware, Lackawanna and Western Railroad Co.

1. The D. railroad company, by agreement, had a right of trackage on the tracks—two running parallel at a distance of seven feet from each other—of the B. company. The plaintiff was a brakeman of the B. company; his train passed from one track to the other, and in the performance of his duty he left the train and closed the switch, the train passing on some distance into the yard without him. He stopped a few minutes and walked along the track to go to his train, which he might have reached in some other way; whilst so on the track he was struck by an engine of the D. company, going in the same direction, and injured. *Held*, that he had no right to be on the track; that being there was contributory negligence *per se*, and he could not recover from the D. company for the injury.

2. Where a person goes on a track, he cannot recover from the company except for wanton injury, although the negligence of the company's agent contributed to the result.

[Mulherrin v. Del., L. & W. Railroad Co.]

3. Except at crossings, where the public have a right of way, one who steps on a track does so at his peril.

4. The employees of the company whose duty requires them to go on the track, if injured, have no redress against the company; they take the risk upon undertaking the employment.

5. Whilst passing from one point of the road to another, the plaintiff had no higher protection than a stranger.

6. The plaintiff was, within the meaning of the Act of April 4th 1868, an employee lawfully engaged about the roads, &c., of the D. company, and therefore entitled only to such right of action as if he had been an employee of the D. company.

March 14th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Luzerne county :* Of January Term 1875, No. 64.

This was an action on the case, brought June 25th 1872, by Patrick Mulherrin against the Delaware, Lackawanna and Western Railroad Company.

The action was to recover damages for injuries sustained by the plaintiff in consequence of having been struck by an engine of the defendants, whilst he was walking on the track of the Lackawanna and Bloomsburg Railroad.   The railroads of the two companies intersected at a point near Scranton.

By an agreement between the two companies, dated April 28th 1863, the defendants had the right to use the Lackawanna and Bloomsburg Railroad for the transportation of coal from the intersection near Scranton to Nanticoke, and to and from all intermediate points.

The plaintiff was in the employ of the Lackawanna and Bloomsburg Company, as a brakeman.   On the 29th of June 1871, he was walking on one of the tracks of that company within the city of Scranton, when he was struck by an engine of the defendants drawing a heavy train of coal cars, and so severely injured that it was necessary to amputate both his legs.

The case was tried October 21st 1874, before Harding, P. J.

The evidence showed that whilst the defendants' trains had a right under the agreement to run on the other company's tracks, yet the running was to be such as not to interfere with the latter company's regular trains ; in consequence, the defendants' trains did not run on any schedule time, but were running by telegraph and signals.   The accident occurred near the crossing of Scranton avenue, which is also intersected by Jackson street, in the part of the city known as Hyde Park.   There were two tracks of railroad here; one bound north on which laden cars passed ; the other bound south on which usually unladen cars passed ; the space between these two tracks was seven feet, and the space between two engines passing on the respective tracks would be about three and a half feet ; on the outside of the southern track there is a

space where persons can walk without risk; there were below the Scranton avenue crossing two switches to enable trains to pass from the southern to the northern bound track.

John Dacy testified: that he was watchman at the Scranton avenue crossing, in the employ of the Lackawanna and Bloomsburg Company; his watchhouse was about four or five feet from the northern bound track; from that place he could see about eighty rods down the track. On the day of the accident witness saw the plaintiff on his train; he jumped off and opened one of the switches, his train went into it, he closed it and the train went on to Scranton so fast that the plaintiff could not again get on the train; if after a switch is turned the brakeman is wanted, the engine is "slowed up" for him to get on; if it leaves him behind, he stays till the engine comes back; if the train should not come back it would be the duty of the brakeman to join his train. After the plaintiff had turned the switches, he walked to the watchhouse and got from witness a match to light his pipe; while standing talking with witness, the plaintiff's train came out from Scranton, and went into the "hill switch;" when plaintiff saw it, he walked from witness about two steps out on the northern bound track; there was then a train coming down from Scranton on the south bound track; when plaintiff stepped on the track he took the direction towards the "hill switch" toward his train; near the watchhouse there was a gully that goes across the track at the intersection of the streets; plaintiff stepped on the track around the gully, and walked on toward the "hill switch," still on the north bound track; the gully where it passed under the track had no covering but the ties; a minute or two after plaintiff left witness, a train came down on the north bound track, the two trains passed the crossing together; the northern train gave no signal; the southern train did; witness thought the northern train was going fourteen or fifteen miles an hour; this train belonged to the defendants, and consisted of a heavy load of coal cars; a second after the northern bound train passed, witness was told that a man had been run over; he went out and found plaintiff lying in a gully on his back, with feet and legs "mashed;" he had been pulled along the track, thirteen or fourteen cars had gone over him, pulling him until he fell into the gully.

On cross-examination witness said, that plaintiff continued to walk on the track as long as he saw him. There was no way for plaintiff to get to his train other than walking between the tracks and in the gutter outside of the south bound track, except "he went by the turnpike and went down again, but that was a long ways for a man that was working to go up the turnpike," it would be safer for a man to walk on the track when it is empty than between the tracks.

Another witness testified: that she was on the south track and

[Mulherrin *v.* Del., L. & W. Railroad Co.]

met plaintiff walking on the other track towards his engine; the engine on the south track whistled for her to get off the track; the plaintiff just then passed her, the other engine was coming up, the two trains passed pretty near together; the train on the north track knocked plaintiff down and dragged him. There was no whistle from that engine; the loaded train came very fast; the plaintiff could not see the train.

The plaintiff testified that on the morning of the accident his train started to Scranton from Bellevue switch, which is south of Scranton, and reaches from near Scranton avenue down to about eighty or a hundred yards; when the train got below Scranton avenue, he got off the train and replaced the switches which had been opened by the front brakeman and the train had crossed over; the train had gone on and he could not reach it. It was his duty to join his train when and where he could; and if it was coming back, to wait there until it came back. If it did not come back it was his duty to approach and rejoin it; he was authorized to use the north bound track and always used it. The usages of brakemen at that particular point were, after closing a switch and their train was in sight, to take the track by the nearest course to get the train.

"I walked on to Scranton avenue crossing to where the watch-man stood, and I expected my train to come from Scranton again after leaving a few cars; I staid until I saw them going over the bridge, and when they got at the 'hill switch' they ran in there and stayed; at that time I stepped from Mr. Dacy out on the track and looked both ways when going on the track, and I saw nothing coming at that time; I saw the track was clear at that time; saw nothing on the northern bound track; there was an empty train on the southern bound track, passing; then I proceeded a distance; I cannot tell the exact distance. * * * I proceeded towards the 'hill switch;' I did not do anything nor hear anything at all; was knocked down just about that time; I was knocked down probably half a second, and some man 'hollered;' * * * and that was all I heard; I was dragged quite a distance, and dragged into this gully and laid there."

The train which struck him was a "wild-cat" train belonging to the defendants; the schedule gives such trains a right on the tracks after certain hours of the day. He stood at the watchhouse to wait for his engine in case others should come along the track; he was to hold them till his was out of the way; where he was struck was about one hundred and sixteen feet from the watchhouse; there was no bell nor whistle sounded, except on the southern bound engine.

On cross-examination he said it was doubtful whether he could have walked with safety between the two tracks; he could have walked on the southern side of the track; but the train was between

31 P. F. Smith—24

him and that side; when he first saw the south train it was between him and the "hill switch;" this train had not passed him when he was struck.

He further testified as to the extent of his injuries, the continuance of his sickness, expenses, &c.

There was evidence also from several witnesses that no signal of the coming of the train was given, that it was going at a high rate of speed, &c.

The defendants gave evidence that signals were given; that the train was going at the rate of five or six miles an hour, &c.; that the plaintiff stepped on the track just before the engine and just as he stepped there the engine struck him; when he came out of the watchhouse the engine was about fifteen or twenty feet distant; plaintiff was about four feet from the engine when he stepped over the rail; he was halloed at by the brakeman of the train as soon as he stepped on the track. Also: that a man could stand with safety between the two tracks whilst two trains were passing each other.

The following are points of the defendants and their answers:—

5. If plaintiff was not an employee of the company using the railroad, then, under the rule of Railroad *v.* Norton, he had no right whatever to be on the track, and his presence there was of itself negligence which concurred in producing the injury; and he cannot recover.

Answer: "This point we cannot affirm. If you find that he was improperly on the track, or there without exercising reasonable caution, brakeman though he was, then, of course, he cannot recover. But this is a question of fact for you under all the testimony in the case."

6. Under the provisions of the first section of the Act of 4th April 1868, the plaintiff has no right of action and recovery against the defendant, other than would exist if the plaintiff had been an employee of the defendant at the time of the accident, and is, therefore, not entitled to recover.

Answer: "We decline to affirm this proposition."

8. It was negligence on the part of the plaintiff to be on the track, and there can, therefore, be no recovery in the case, even though there may have been negligence on the part of the company's employees.

Answer: "We have already said to you, and we repeat it, that it is for you to determine, under the testimony of Mr. Gaynor, under the testimony of the conductor, and under the testimony of Mulherrin himself, whether the latter negligently went upon that track, knowing, as he did, of these particular trains, and the right of the defendant to run them. If you shall find that he did, then he would not be entitled to recover. In determining, however, as to this, it is your duty to consider every fact and circumstance

[Mulherrin *v.* Del., L. & W. Railroad Co.]

brought to your notice by the witnesses in the case on the one side and the other. Such is our answer to this point."

9. As plaintiff was an employee on the railroad, well acquainted with the running of the trains, and therefore bound to exercise a high degree of care, it was negligence on his part to walk on the track on which he knew trains were constantly running, so as to approach him in a direction in which he could not see them, and he' is therefore not entitled to recover.

" Our answer to this point may be stated thus: If any other person than a brakeman had gone upon that track, as the plaintiff admits he did, unquestionably it would have been negligence *per se;* and if such person had been run down, it would have been the fruit of his own folly, and he could not recover. Whether the plaintiff was guilty of negligence, or not, is for you to determine, in view of all the evidence in the case, amongst which is the fact that he was a brakeman, and that it was his duty to close the switches near the watchhouse, his train moving on meantime, and the further fact that he was seeking to join it when he was struck, though with full knowledge on his part that the defendant was running trains every hour in the day over the road at that point."

By the first section of the Act of 4th April 1868, Pamph. L. 58, 2 Br. Purd. 1094, pl. 5: " When any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company, or in or about any train or car therein or thereon, of which company such person is not an employee, the right of action and recovery in all such cases against the company shall be such only as would exist if such person were an employee."

The verdict was for the plaintiff for $4000.

The defendants took a writ of error; they assigned for error the answers to their points.

*S. Woodward* and *A. T. McClintock* (with whom was *E. N. Willard*), for plaintiff in error.—If it would have been negligence *per se*, in a person other than a brakeman, going upon the track as the defendant in this case did, then the fact that he was an employee of another company and about such other company's business, does not change the rule, and if he was injured while in the ordinary pursuit of that company's business, under the circumstances of the case, and the fact that other brakemen were in the habit of walking on the track when there were other places of safety for them to walk, does not help the plaintiff's case, nor change the rule of negligence. That which would have been negligence in any other person than a brakeman was negligence in Patrick Mulherrin: Railroad Company *v.* Norton, 12 Harris 465; Philadelphia & Reading Railroad Co. *v.* Hummel, 8 Wright 375.

This Act of 1868 is constitutional: Kirby *v.* The Pennsylvania

[Mulherrin *v.* Del., L. & W. Railroad Co.]

Railroad Company, 26 P. F. Smith 506. The case of the plaintiff falls within the terms of the Act of 1868; he had voluntarily ventured into employment alongside of the servants of the defendant. He knew well the risks of his employment, and cannot recover for injury even though it was caused by the negligence of the servants of defendants, who were engaged in the same employment and on the same railroad. It is the duty of courts in cases of clear negligence arising from an obvious disregard of duty and safety, to determine it as a question of law: Pittsburg & Connellsville Railroad Company *v.* McClurg, 6 P. F. Smith 294; P. & R. Railroad Company *v.* Hummel, 8 Wright 375; O'Brien *v.* P., W. & B. Railroad Company, 3 Phila. Rep. 76. Clear negligence on part of plaintiff is most conclusively established under the facts proved in the case, and the 8th and 9th points should have been affirmed.

*C. L. Lamberton* (with whom was *E. P. Kisner* and *F. C. Mosier*), for defendant in error.—The use of a railroad track, except at lawful crossings of public roads or highways, is exclusively for the company and their employees: Railroad *v.* Hummel, 8 Wright 375. Mulherrin was then rightfully on the track, and it was for the jury what his duties as brakeman required of him and his authority in discharging those duties, to be on the track at the time of his injury: Catawissa Railroad Co. *v.* Armstrong, 13 Wright 186.

Negligence is to be submitted to the jury upon the question of reasonable and ordinary care under all the circumstances of the case: Patterson *v.* Wallace, 1 McQueen, H. of L. Cas. 48. Even where the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was exercised or whether they established negligence: Sioux City & P. Railroad Co. *v.* Stout, 17 Wall. 637; Southworth *v.* Old Col. & New. Railroad Co., 105 Mass. 344; Bill *v.* Smith, 39 Conn. 296; Baltimore & Ohio Railroad Co. *v.* Dougherty, 36 Md. 366; Same *v.* Fitzpatrick, 35 Id. 32. When the standard shifts with the circumstances of the case, it is in its very nature incapable of being determined as a matter of law, and must be submitted to the jury to determine what it is, and whether it has been complied with: West Chester & Phila. Railroad Co. *v.* McElwee, 17 P. F. Smith 315; Catawissa *v.* Armstrong, 2 Id. 282; Penna. Coal Co. *v.* Bentley, 16 Id. 34; Johnson *v.* West Chester & Phila. Railroad Co., 20 Id. 357; Kay *v.* Penna. Railroad Co., 15 Id. 269; Glassey *v.* Passenger Railroad Co., 7 Id. 174; Phila. Pass. Railroad Co. *v.* Hassard, 25 Id. 367; Penna. Railroad Co. *v.* McTighe, 10 Wright 316.

Whether Mulherrin's acts and position at the moment of the accident contributed to his own injury were questions for the jury: L. & B. Railroad Co. *v.* Chenewith, 2 P. F. Smith 382;

[Mulherrin v. Del., L. & W. Railroad Co.]

Catawissa Railroad Company v. Armstrong, 13 Wright 187; s. c. 2 P. F. Smith 282; Pennsylvania Railroad Co. v. Ogier, 11 Casey 60; Gaynor v. Railway, 100 Mass. 208; 2 Redf. Am. R. Cases 554. It is no justification to the defendants below that they were in the exercise of a lawful right, if the injury arose from the negligent manner in which it was done. And this was a question for the jury: Penna. Railroad Co. v. Barnett, 9 P. F. Smith 259; 1 Redf. on Railroads, sect. 131, p. 527. The rapid running of a train of cars around curves at crossing places over the railroad without usual and necessary signals is negligence *per se:* Penna. Railroad Co. v. Ogier, 11 Casey 71; Reeves v. D., L. & W. Railroad Co., 6 Id. 454.

The first section of the Act of 1868 even if valid and applicable to persons falling within its terms, cannot be made to apply to the parties to this litigation. Mulherrin was not hurt on the road of the defendant company or near it; and is not within the words or purview of the statute. At no time was he "lawfully engaged or employed on or about the roads, works, depots and premises of the Delaware, Lackawanna and Western Railroad Company, or in or about any train or car therein or thereon." The policy of the law is not to extend the rule restricting the right of action by the employee against the employer in cases of negligence: Catawissa Railroad Co. v. Armstrong, 13 Wright 186. Statutes are not presumed to make any alteration in the common law farther or otherwise than the act expressly declares, and must be construed strictly: Melody v. Reab, 4 Mass. 471; Gibson v. Jenney, 15 Id. 205; Commonwealth v. Knapp, 9 Pick. 496; Wilbur v. Crane, 13 Id. 284.

A statute which is to take away a remedy given by the common law ought never to have an equitable construction, and must be construed strictly: Hammond v. Webb, 10 Mod. 282. The act in question being in the nature of a penal statute, ought to be construed strictly to save a right or to avoid a penalty: Whitney v. Emmett, 1 Bald. 316; Sprague v. Birdsall, 2 Cowen 419; Gilbert v. Col. Turnpike Co., 3 Johns. Cas. 107; Bennett v. Ward, 3 Caines 259; Sickles v. Sharp, 13 Johns. 497; Jones v. Eustis, 2 Id. 379; Myers v. Foster, 6 Cowen 567; Wales v. Stetson, 2 Mass. 146; Smith v. Spooner, 3 Pick. 229. A statute which grants exclusive privileges in derogation of the common-law rights of the citizens at large ought not to be extended by implication; on the contrary, it should be construed strictly against the company: Cayuga Bridge Co. v. Magee, 2 Paige 116; Culver v. Hayden, 1 Verm. 359; McMullin v. McCreary, 4 P. F. Smith 230.

It is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did not intend

to make any alteration other than what is specified and besides what is plainly pronounced.   If that had not been the intention, the legislature would have expressed it otherwise : Dwarris on Statutes 43 ; Borland *v*. Nichols, 2 Jones 43 ; Stormfeltz *v*. Manor Turnpike Co., 1 Harris 555.   The contract to use the roadway of the Lackawanna and Bloomsburg Railroad Company in common did not make Mulherrin subject to the rule governing employees of the company defendant : Catawissa Railroad Co. *v*. Armstrong, 13 Wright 187 ; s. c. 2 P. F. Smith 282 ; Hanover Railroad Co. *v*. Coyle, 5 Id. 396 ; Smith *v*. N. Y. & Harlem Railroad Co., 19 N. Y. 127 ; Sawger *v*. Rut. & Burl'n Railroad Co., 27 Vt. 370 ; Warburton *v*. Great Western Railroad, 36 L. J. N. S. Exch. 9 ; Farwell *v*. Boston & Worcester Railroad Co., 4 Metc. 49.

Mr. Justice Paxson delivered the opinion of the court, May 8th 1876.

This was an action of trespass on the case for injuries resulting from alleged negligence on the part of the employees of the railroad company in moving their cars.   The undisputed facts of the case are substantially as follows : The injury was caused by the train of the Delaware, Lackawanna and Western Railroad Company.   The track was owned by the Lackawanna and Bloomsburg Railroad Company.   The former company had the right of trackage over the road by virtue of an agreement between the two companies.; and the train of the Delaware, Lackawanna and Western Railroad Company was lawfully upon the track.   There are two tracks at the point where the injury occurred.   Between the inside rails of said tracks there is a space of seven feet in width, leaving a clear space between passing trains of about three and a half feet in width, while outside of the southern track there is room to walk without danger.   Patrick Mulherrin, the plaintiff, was in the employ of the Lackawanna and Bloomsburg Company, as a brakeman.   On the morning of the 29th of June 1871, he was on his train approaching Scranton from a northerly direction ; when near Jackson street he got off from his train to turn the switch, and having performed this duty he went to the watchman's house near the switch, where he remained some time in conversation with the watchman, then lighted his pipe and started towards Scranton to join his train, walking on the northern track.   When he stepped on said track a train was passing him on the southern track.   Instead of waiting until the train had passed, and then crossing over both tracks to the outside of the southern track, where there was clear space to have walked with safety, he continued walking on the northern track until he was overtaken by the defendants' train moving in the same direction, which struck and badly injured him. Upon this state of facts he seeks to recover from the defendants damages for the injuries sustained.

[Mulherrin *v*. Del., L. & W. Railroad Co.]

It was held in the Railroad *v*. Norton, 12 Harris 465, that where a person places himself on the track of a railroad, he can claim no damages except for wanton injury, and not for injury sustained in the pursuit of the company's lawful business in the ordinary manner, even though the negligence of the company's agent contributed to the result.   It was said by Mr. Justice WOODWARD, in delivering the opinion of the court, that in order to make railroad companies to carry safely, " the law insists upon a clear track." This doctrine cannot be too emphatically asserted or rigidly enforced.   We hold these corporations to a strict line of responsibility whenever passengers are injured by accidents to their trains. It follows that we should be equally emphatic as to their control of their tracks.   Except at crossings, where the public have a right of way, a man who steps his foot upon a railroad track does so at his peril.   The company have not only a right of way, but such right is exclusive at all times and for all purposes.   This is necessary, not only for the proper protection of the company's rights, but also for the safety of the travelling public.   It is not right that the lives of hundreds of persons should be placed in peril for the convenience of a single foolhardy man, who desires to walk upon the track.   In England it is a penal offence for a man to be found unlawfully upon the track of a railroad.   It would add materially to the public safety were there a similar law here.

These remarks do not, of course, apply to employees of railroad companies whose duties require them at certain times and for certain purposes to be upon the track.   They go there in the course of their employment, and under the well-settled rules of law they take the risk.   In cases of personal injury they have no redress against the company employing them, and by the act of whose servants it is occasioned.   In this case the plaintiff was not in the employ of the defendants, but was a brakeman of the Lackawanna and Bloomsburg Company.   The evidence clearly shows that he was not necessarily on the track when he was struck by the train.   He got off his train to perform a duty, to wit, the adjustment of a switch.   That duty had been performed when he sought to rejoin his train.   If, in doing this, he saw fit to walk upon the track, he did so at his own risk.   His obligation to join his train involved neither a duty nor a necessity to walk where he was struck.   It was clearly proved that there was ample opportunity of reaching his train without incurring such peril.   It is true some of his witnesses say he could not have avoided the track without taking a circuitous route.   But a careful examination of the testimony showed that this was based upon the fact that when he started there was a train upon the southern track.   It appears from the cross-examination of the plaintiff, that if he had waited for a few moments, until the southern bound train had passed, he

could have crossed over and walked along the outside of the southern track to his train in perfect safety. It was a mere matter of passing from one given point of the road to another. Whilst so engaged he had no higher protection than a stranger walking over the same ground. It was correctly said by the learned judge in another portion of his charge: "If any other person than a brakeman had gone upon the track, as the plaintiff admits he did, unquestionably it would have been negligence *per se ;* and if such a person had been run down it would have been the fruit of his own folly, and he could not recover." Yet in what better position was the plaintiff than a mere stranger? He was not injured while engaged about the switch, or in any other duty which required his presence *on the track.* Passing from one point to another point on the road was not such a duty, unless there had been no other place for him to walk, which was not the case. We think, therefore, that as applied to the facts of this case, the defendant's fifth point ought to have been affirmed, and that it was error to decline it.

There was also error in not affirming the defendant's sixth point. The case comes clearly within the terms of the first section of the Act of 4th April 1868, Pamph. L. 58, which provides, " that when any person shall sustain personal injury or loss of life, while lawfully engaged or employed on or about the roads, works, depots or premises of a railroad company, or in or about any train or car thereon, of which company such person is not an employee, the right of action and recovery in all such cases against the company shall be such only as could exist if such person were an employee." This act was passed shortly after the decision in the Catawissa Railroad Co. *v.* Armstrong, 13 Wright 186, was published, in which it was held, that when a person in the employ of one railroad company was injured by the cars of another company who had the right to run their trains over the other's road, the person so injured was not precluded from recovery on the ground that he was in the same general employ with the servants of the company whose cars caused such injury. It is highly probable the Act of 1868 was passed in view of this decision. Be that as it may, it is our duty to give it effect according to its plain meaning. The plaintiff's case comes precisely within its terms. He was not an employee of the defendants, but he was employed on or about their road. The fact that the defendants were only entitled to track rights to the road is not material. This is not a question of the extent of their title. It was the road of the defendants for the purpose of moving their trains, which is sufficient to bring the case within the Act of 1868. This is decisive of the plaintiff's case and renders it unnecessary to discuss the remaining assignments of error.

Judgment reversed.