PENN. R. CO. v. MARGARET MOONEY ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 10, 1889—Decided May 6, 1889.
[To be reported.]

(a) In an action to recover damages for a negligent act causing the death of plaintiff's husband, the only testimony showing the manner of the decedent's death was, that just as he stepped upon the track at a public crossing he was struck by the defendant company's train and killed.

1. In such case, if the deceased was walking upon the track and was crossing the highway, he was a trespasser; if he was walking upon the highway and was crossing the track, he was guilty of contributory negligence: in either event the plaintiff was not entitled to recover.

2. The presumption that the deceased performed his legal duty to stop, look and listen, slight and faint at the best, was overborne by the affirmative proof from the plaintiff's witness that he was struck the moment he set foot on the track in front of the locomotive.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 239 January Term 1889, Sup. Ct.; court below, No. 332 December Term 1883, C. P. No. 3.

On January 5, 1884, Margaret Mooney and others, as the widow and children of Thomas Mooney, deceased, brought an action in case against the Pennsylvania Railroad Company, to recover damages for injuries inflicted by the defendant company causing the death of said Thomas Mooney. Issue.

At the trial on October 4, 1888, the case presented was to the effect that Thomas Mooney, on February 14, 1883, the date of the accident, was foreman of a gang of laborers, who for some time before the accident, had been engaged in laying an additional track upon the line of the railroad. At the time of the accident, their work had progressed to a point between Bristol and Tullytown. On the morning of the accident the gang had started to walk along the track from Bristol to the point at which they were to continue their work. They were

scattered along the track in small groups. Before reaching the point at which they were working they would cross over Green Lane, a highway of the county. Mooney was walking with Michael Welsh, a co-laborer. When within about fifteen yards of Green Lane, Mooney gave his dinner-kettle to Welsh and stopped behind some ties that were piled up along the railroad. Welsh continued on, walking up the track. The next that was seen of Mooney was by another laborer, Patrick Archer, who saw Mooney as " he was just about in the act of stepping across the crossing," when he was struck by a coming train and killed. Testimony was introduced to show that smoke from another locomotive hugged the ground and obscured the vision; that there was a siding upon which other cars were standing, which also prevented a view of the approaching train; that the morning was dark and foggy, the accident occurring between 6 and 7 o'clock; and that the crossing was wholly unprotected by gate, flagman or bell, no warning or signal whatever being given by the approaching train. There was no conflict in the testimony, upon the facts sought to be established.

The defendant company requested the court to charge, inter alia:

6. Under all the evidence in this case your verdict must be for the railroad company defendant.[7]

The court, FINLETTER, P. J., refused the foregoing point, as requested, and charged the jury as follows:

In this case the plaintiff cannot recover unless it should appear from the evidence, first, that the defendants through their employees were negligent, and also unless it should appear from all the testimony in the case that Mr. Mooney on that occasion was not negligent. It becomes important, therefore, for you to understand exactly what the duty of the defendants in using their railway upon that occasion was.

It is their duty to use all reasonable means to protect the general public from injury in consequence of their using their railway, or the manner in which they use it. The manner in which those employed in running an engine of this kind, you will see, depends very much, therefore, upon the circumstances of the case. Less care is required where little or no travel can

reasonably be expected, than where from the nature of the locality and its surroundings people may reasonably be expected to be.

At a public crossing there should always be some notice given to the traveling public of the approach of the coming trains. Even this notice you will see depends to a certain extent upon circumstances.. These circumstances would be the rate of speed at which the train was going, the locality in which the accident may have happened, the obstructions which might prevent a clear or a distinct view. In considering the question of the negligence of the defendant, you will therefore consider carefully the locality of this accident, the manner in which the train was running, the condition of the atmosphere as it may have been affected by the smoke, the obstructions, if any, upon the track, the effect of the passing coal train as affecting the noise of the train which killed Mr. Mooney, and especially what those who were running this train did or omitted to do to give notice to those who might be about to cross the track on that public crossing.

In your inquiry it might be important to fix precisely the spot at which Mr. Mooney was struck. For this purpose you have the evidence of the witnesses who were there and saw the accident. In addition to this you have the surrounding circumstances. First, you have the marks of the heel of the shoe at or near the crossing. Now, if the evidence shows that these marks were made by Mr. Mooney at the time he was struck it would perhaps be conclusive of his position when he was struck; but if this evidence does not prove this, it proves nothing in this case, and should be disregarded by the jury. It is, however, in evidence that Mr. Mooney's body was found ninety feet from the crossing, and it must be taken as an undisputed physical fact that when two objects in motion meet, the heavier and swifter will move the lighter one. If, therefore, Mr. Mooney was struck at the crossing he would have been moved some distance by the heavier and swifter engine and train. That distance would depend upon the weight of the engine and train and the velocity with which it was driven. These are facts which you should carefully consider in fixing or attempting to fix the point at which Mr. Mooney was struck.

If you are satisfied from the evidence that the employees of

the defendant were negligent, then you must determine the question whether Mr. Mooney himself was negligent or not. If he were crossing the railway at the public crossing, then it was his duty before he attempted to cross, to stop and look and listen. If the smoke and standing cars obstructed his vision, if the passing train obscured his hearing, these facts required him to be the more careful in stopping and looking and in listening. As there are no witnesses who saw Mr. Mooney immediately before he was struck, and no evidence of his acts at that time, the law presumes that he stopped and looked and listened.

If you are satisfied, upon a careful consideration of the testimony, that the defendants were negligent, which negligence in any manner produced the death of Mr. Mooney, and that Mr. Mooney himself was not negligent on that occasion, then the question of damages arises and you must determine it.

\*        \*        \*        \*        \*        \*        \*        \*

The jury returned a verdict in favor of the plaintiff for $8,000. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ and assigned as error, inter alia:

7. The refusal of the defendant's sixth point.[7]

*Mr. David W. Sellers* (with him *Mr. Garvin W. Hart*), for the plaintiff in error:

1. Mooney was in the employ of the railroad company, and at the time of the accident he was walking along the track to his work. The fact that he was struck at a crossing, does not of itself prove that his rights were those of a pedestrian using a highway to cross the track. He had been walking along the track; his ultimate destination was still along the track, but at a point beyond Green Lane. The fact that he was struck at the crossing is immaterial. The reason that he was struck was because he was using the track longitudinally. Had he been upon Green Lane before the accident, using it as a citizen traveling on a highway to approach the railroad, a different question would arise, but he was clearly there as a workman. No evidence has been offered on this, except that " he was just in the act of stepping across the crossing." For what purpose? To get to a point still farther along on the railroad.

That is, he was using the track to cross the highway. If he were a trespasser then the company owed him no duty.

2. Except at crossings where the public have a right of way, a man who steps his foot upon a railroad track does so at his peril. The company have not only a right of way, but such right is exclusive at all times and for all purposes. This is necessary not only for proper protection of the company's rights, but also for the safety of the traveling public. It is not right that the lives of hundreds of persons should be placed in peril for the convenience of a single foolhardy man who desires to walk upon the track: Mulherrin v. Railroad Co., 81 Pa. 366, affirming Railroad Co. v. Norton, 24 Pa. 465; and affirmed in Pittsb. etc. Ry. Co. v. Collins, 87 Pa. 405; Cummings v. Railway Co., 92 Pa. 82; Cauley v. Railway Co., 95 Pa. 398; Cauley v. Railway Co., 98 Pa. 498, and Moore v. Railroad Co., 99 Pa. 301. Mooney's business called him to work on the railroad. To get there it necessitated the use of the track as a passageway. He used the track, his intention and object being to go to the point of the road upon which he was to work. While using it in furtherance of this intention the accident occurred. Clearly within the reasoning of the case of B. & O. R. Co. v. Colvin, 118 Pa. 230, he cannot recover; otherwise a man engaged in repairing a track at a crossing has a different right from him who is rapeiring elsewhere.

3. There was no conflict of testimony in this case. The circumstances of the accident had been detailed by three witnesses, whose testimony together made up the entire account, no one of them having seen all. No testimony was offered on the part of the railroad company, and the matter then became one of law and exclusively for the court. The cases as to this proposition are legion, the last being Del. L. & W. R. Co. v. Cadow, 120 Pa. 559: "Ordinarily the existence of negligence is a question of fact for the jury, but when the facts are uncontroverted their legal effect is a question of law for the court.

*Mr. David H. Ross* and *Mr. Charles F. Warwick* (with them *Mr. James Harland*), for the defendants in error:

1. It is maintained that the testimony does not support the theory, that Thomas Mooney was walking upon the defendant's

tracks at or below Green Lane, on his way to his work above said crossing, and that his presence upon the tracks made him a trespasser. Having left the track some fifteen yards below the crossing at Green Lane he ceased to be a trespasser, and when next seen he was in the " act of going across the track " at the public crossing where he was struck by the train and killed. The fact that he had been walking upon the track before, is no evidence that he returned, and as a trespasser incurred a risk. The presumption is ever in favor of innocence, not of guilt, and all the facts, inferences and presumptions in the case, show that Mooney was crossing the track at Green Lane, walking at right angles to the track; that he was just " in the act of stepping across the track " when he was struck. The testimony as to the condition of his coat, the marks of his boot nails on the board crossing, and that he was just " in the act of stepping across the track," all make out a case upon the part of Mr. Mooney clear of contributory negligence.

2. What Mr. Mooney did upon approaching the crossing can only be presumed, as he was never seen after he left the pile of ties on the roadside until the moment he was struck by the train ; but in the absence of testimony upon this point, it is conclusively presumed that he exercised such care as the circumstances required, as has been expressly decided by this court: Penn. R. Co. v. Weber, 76 Pa. 157.

3. The time, place and surrounding circumstances were such as to call for extraordinary care in running the train in question. It was an early morning in February, foggy, cloudy and drizzling rain. Gondola or freight cars were on the No. 4 track above the crossing, that first passed by Mr. Mooney when crossing the railroad. A coal train had barely passed east upon track No. 2, puffing out smoke and steam, which, owing to the condition of the atmosphere hugged the tracks and must have in a measure obscured the view up the road, while the rattle of the passing coal train would drown the noise produced by the rapidly approaching train on track No. 3. The road known as Green Lane, a public highway crossing the tracks at grade, was much used by wagons and foot passengers. Moreover Mr. Mooney from the time he quit work the day before the accident, ceased to be an employee of the company : Baird v. Pettit, 70 Pa. 477. It is a grave question whether or not under the law,

Mr. Mooney was the co-employee of an engineer who drove a fast train upon a track other than that upon which· he was employed to do work: Garraty v. Railroad Co., 25 Fed. R. 258.

OPINION, MR. JUSTICE GREEN:

.There was no evidence but that of the plaintiff on the trial of this case. Three witnesses were examined who were present at the occurrence of the accident, but only one of the three saw and described the actual collision which caused the death of the plaintiff's husband. It was testified by all the witnesses that the deceased and several others, all in the employ of the defendant, were walking along the railroad track on their way to do some work on the road. The deceased left the track· shortly before reaching Green Lane crossing to attend to a call of nature. No witness seems to have observed his return to the track and no one describes it. Archer, the only witness who saw the very fact of the collision, thus describes it: " Q. Where were you at the time of the accident? A. About one hundred or perhaps one hundred and fifty yards below the crossing to the best of my knowledge. I didn't measure it, but to the best of my knowledge." . . . . " Q. Did you see Mooney struck by that passenger train? A. Yes, sir. ·Q. Where was he at the time he was struck to the best of your knowledge? A. To the best of my knowledge he was just about in the act of stepping across the crossing." . . . . " Did you see from where Mooney came? A. No, sir. Q. He was just walking along the track then the same as the rest of you? A. No, sir. Q. What was he doing? A. He was in the act of going across the track at the time I saw him. There was a man walked with me, and the track I was walking on was just only made. I was walking along and the man made the remark. Q. What did you see? A. At the time I saw him he was just struck by the train. Q. And he was struck by the train at this crossing? A. To the best of my knowledge; I judge it was about the crossing. Q. Are you positive of it? A. To the best of my knowledge. Q. Are you positive of it? A. Yes, sir; for we examined it there the next day—that afternoon. Q. How was it that you did not see where Mooney came from if you saw him struck? A. This man made the remark to me first walking down; I happened to look up. Q. And you looked up and saw Mooney right at the crossing and instantly struck? A. Yes, sir."

The witness Mulhearn says nothing about seeing Mooney until after he was struck, and the only remaining witness, Welsh, said he had passed on about one hundred or one hundred and fifty yards beyond Green Lane crossing when the accident occurred; that he did not see the killing, and that he next saw Mooney's body about ninety feet on the other or western side of the crossing. Neither Welsh nor Mulhearn saw the actual collision, and the only witness to that fact was Archer, the whole of whose testimony on that subject is quoted above. The consideration of the case becomes very much simplified in view of the state of the testimony upon this vital subject. There was much contention in the argument as to whether Mooney was walking along the track and on it, or across it on the highway called Green Lane, at the moment he was struck. It is difficult to understand how he came to be crossing the track transversely on the highway, when he and all the others were proceeding lengthwise along the track on the way to their work, but Archer testifies to it, and although he says he was one hundred to one hundred and fifty yards away, he says he saw Mooney as he was struck, and that he was at that moment crossing the track.

It matters but little, however, whether Mooney was crossing the highway lengthwise and between the rails of the track, or crossing the railroad and between the rails in the highway, at the moment he was struck. He was on the track or he would not have been struck. If he was crossing the highway he was a trespasser and there could be no recovery, and if he was crossing the track he was guilty of most manifest contributory negligence in stepping upon the track immediately in front of an approaching engine. We have passed decisively upon these facts in a number of our recent decisions. In Carroll v. Penn. R. Co., 12 W. N. 348, we held there could be no recovery, although the plaintiff testified that before he stepped upon the track he stopped and looked and listened but neither saw nor heard the approaching train. We said: "The injury sustained by the plaintiff was attributable solely to his own gross carelessness. It is in vain for a man to say that he looked and listened if in despite of what his eyes and ears must have told him he walked directly in front of a moving locomotive." Similar cases are Monongahela City v. Fischer, 111 Pa. 9,

Mulherrin v. Railroad Co., 81 Pa. 366; Moore v. Railroad Co., 108 Pa. 349; B. & O. R. Co. v. Schwindling, 101 Pa. 258; Penn. R. Co. v. Bell, 122 Pa. 58.

In the present case there was no proof that Mooney stopped, looked, or listened before stepping upon the track. In this respect the plaintiff's case has nothing to sustain it but the presumption that the deceased performed his legal duty of stopping, looking, and listening, but that presumption, slight and faint at the best in this class of cases, is completely overborne. by the affirmative proof to the contrary that he was struck the moment he set foot on the track. It is impossible that he could have looked and listened when the indisputable fact is that he stepped on the track immediately in front of an approaching locomotive. In the very recent case of Marland v. The Pittsburgh and Lake Erie R. Co., 123 Pa. 487, we said: "On the trial of this case the plaintiff testified that he stepped upon the track and was instantly struck and injured. It is true he said he looked up and down the track and saw nothing, but it is necessarily true also that if he made use of his eyesight he must have seen the approaching train. He could not possibly look along the track, in the direction of the approaching train, and fail to see it, since his presence on the track and the collision were simultaneous."

It was suggested in the argument of the case at bar that Mooney's view of the approaching train might have been obscured by the smoke of another train which was passing in the opposite direction and which, it was said by some of the witnesses, hugged the track. But that theory is entirely dispelled by the affirmative testimony of Archer, the plaintiff's chief witness, who testified that he saw the train strike Mooney although he was a hundred to a hundred and fifty yards away. Moreover the law requires a listening, as well as a looking, for a coming train, and obscuration of vision is no defence against a failure to listen.

These considerations sustain the seventh assignment of error and it is unnecessary to consider the others.

Judgment reversed.