# Fry *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Grade crossing—" Stop, look and listen "— Proper place to stop.*

In an action against a railroad company to recover damages for injuries to a team and sled at a grade crossing, the evidence as to the driver's contributory negligence is properly submitted to the jury, where such evidence tends to show that the driver approached the crossing with a heavy load, that he stopped to look and listen when he was only about one or two lengths of the sled and team from the track, and that the place where he stopped was the usual place where teamsters stopped before crossing the railroad.

In such a case it is not error for the court to say to the jury that if the driver stopped at a place where the traveling public generally or customarily stopped it is strong evidence that he stopped at a proper place. The use of the word " strong " in place of " persuasive," the word used in Muckinhaupt v. Erie Railroad Co., 196 Pa. 213, does not constitute error.

Argued Oct. 28, 1903.   Appeal, No. 39, Oct. T., 1903, by defendant, from judgment of C. P. Huntingdon Co., May T., 1901, No. 23, on verdict for plaintiff in case of D. R. Fry v. Pennsylvania Railroad Company.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass for injuries to a team, sled and harness.   Before BAILEY, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $317.   Defendant appealed.

*Errors assigned* were (1-3) answers to points quoted in the opinion of the Superior Court.

*J. D. Dorris*, with him *W. Dorris*, for appellant.

*W. M. Henderson*, for appellant.

OPINION BY MORRISON, J., January 21, 1904:

The plaintiff brought an action of trespass to recover damages for injury to his team, sleds and harness, caused by the alleged negligence of the defendant.   The damages claimed

were caused by an accident at a grade crossing of the Tyrone and Clearfield branch of the Pennsylvania Railroad at the village of Sandy Ridge in Centre county, Pennsylvania, on February 25, 1901. The accident killed one horse, injured another and broke and injured the plaintiff's sleds and harness. The team of the plaintiff was being driven by his son, Charles Fry, and of course the important questions in the case are the contributory negligence of the driver and the negligence of the defendant. Both of these questions were submitted to the jury by the learned judge below in a charge that we regard as favorable to the defendant as the facts warranted. The jury must have found that the plaintiff's driver was free from contributory negligence, and that the defendant through its employees was guilty of negligence which caused the injury complained of. The assignments of error are based on the following points and answers thereto : 1. " That under all the evidence in the case the verdict must be for the defendant." *Answer :* " Refused." 2. " There is some evidence that Charles Fry and one of the other witnesses for the plaintiff were intoxicated at the time of the accident, which the defendant alleges placed them in such condition that they were not capable of hearing the whistle or ringing of the bell, if such signals were given." *Answer :* " You may consider this testimony." 3. " If there was a place where the traveling public generally or customarily stopped their teams to look and listen for approaching engines and trains, and if Charles Fry stopped at this place for that purpose, it is strong evidence that he stopped at a proper place." *Answer :* " Affirmed."

The counsel for the defendant assumes that Fry stopped his team at a point fifty feet from the railroad track and looked and listened for trains, and that from this point he could not see the tracks in the direction from which the train or locomotive was coming. An examination of the testimony of Charles Fry, John Harris and Harry Chamberlain, witnesses for the plaintiff, who were present at the time of the accident, tends to show that the place where Fry stopped to look and listen was only about one or two lengths of the sleds and team from the track. The testimony also tends to show that Fry stopped at the usual place where teamsters stop, look and listen before crossing the railroad at that point.

While it is true that the testimony shows there were obstacles and that the track and trains could not be well seen from this point, yet we cannot say that the learned judge below erred in refusing to say as a matter of law that Fry was guilty of negligence in stopping at this point.    One or two lengths of a sled and team is not very far and it does seem that if a train was approaching a crossing sounding the whistle and ringing the bell, a person standing that distance from the crossing, if he was looking and listening, would not fail to hear the approaching train even if he could not see it.    But as we understand the evidence it is not clear and undisputed that Fry could not see the track from the point where he stopped.    The evidence as to whether the proper signals were given is in dispute as is the evidence bearing upon the contributory negligence of the plaintiff's teamster.    A careful examination of the testimony convinces us that this case is within the rule of Muckinhaupt v. Erie Railroad Co., 196 Pa. 213.    That case is much like the one under consideration.    In it Mr. Justice FELL said (p. 216) : " The whole duty of one about to cross the tracks of a steam road at grade is not in all cases confined to his stopping, looking and listening for the approach of a train.    He must stop at a proper place, and when he proceeds he should continue to look and to observe the precautions which the danger of the situation requires.    He should stop again if there is another place nearer the tracks from which he can better discern whether there is danger.    But whether the place at which he stopped was the proper place at which to stop, and whether there is a second place at which he should stop, are questions of fact for the jury, and not matters of law for the court." Citing a large number of authorities.    " The usual and customary place of stopping by people using a road cannot be said as a matter of law to be an improper or negligent place.    The standard of negligence is what persons of ordinary prudence and carefulness would do under the same circumstances, and a general habit of the public to stop in a certain place is persuasive evidence that that place is the right one."    Under the evidence and the authorities, as we understand them, it was not error to refuse the defendant's first point, and, therefore, the first assignment is not sustained.

The evidence that Charles Fry was intoxicated was so slight

that it can hardly be said to rise above a scintilla.   The record does not disclose any written point or request to the court for instructions to the jury in regard to the effect of intoxication of Fry on the question of contributory negligence.   If the learned counsel for the defendant considered that the evidence warranted the jury in finding that Fry was intoxicated he could have requested the court to give special instructions to the jury upon this point, and having failed to make such specific request we do not consider the second assignment sustained.

Under all the evidence the third assignment is not sustained. It is based on the answer to defendant's third point, and it is not open to criticism unless the use of the words " strong evidence " in place of " persuasive evidence " constitutes error. The latter words " persuasive evidence," are recognized as correct by Mr. Justice FELL in Muckinhaupt v. Erie Railroad Co., supra, and we cannot believe the use of the word " strong " in place of " persuasive " constitutes error.   Surely it would not mislead the jury.

It is strongly contended by the learned counsel for the defendant that the court below erred in refusing to give a binding instruction to the jury that the plaintiff could not recover because of the contributory negligence of Charles Fry in failing to stop, look and listen at a point nearer to the railroad track.

In support of this contention Kinter v. Pa. R. R. Co., 204 Pa. 497, and cases therein cited are relied upon.   In the Kinter case the evidence was clear and undisputed, and the inferences to be drawn therefrom were not in doubt.   It is hardly necessary to say that we recognize it as controlling authority where the evidence brings a case within its rule.   But in the case under consideration there is a clear dispute as to the best place to stop, look and listen.   And this distinguishes our case from those that fall within the principle of the Kinter case.

If Charles Fry was driving his team with a heavy load up a steep grade, on sleighing, towards the railroad track, and he stopped and looked and listened when within a length or two of his sled and team from the track, it is difficult to understand what more he could have done.   Whether he did this or not, in good faith, was under the evidence clearly for the jury.

Under the evidence it must be conceded that the alleged

negligence of the defendant was clearly for the jury and as we have said so was the contributory negligence of the plaintiff's driver.

" In order to justify the court in treating the question of contributory negligence as one of law, not only the facts but the inferences to be drawn from them must be ·free ·of doubt. If there is doubt, as to either, the case must go to the jury:" McNeal v. Pittsburg, etc., Railway Co., 131 Pa. 184; Davidson v. Lake Shore, etc., Railway Co., 171 Pa. 522.

A careful consideration of the testimony convinces us all that the vital questions were in dispute, and it was the duty of the court to submit them to the jury, and if the·verdict was against the weight of the evidence the court could set it aside and grant a new trial.    But the learned court having approved the verdict, by granting judgment thereon, we are only called upon to pass upon the questions raised by the·assignments of error, and none of the assignments are sustained, but they are all dismissed and the judgment is affirmed.