## ALICE McNEAL v. PITTSB. & W. RY. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 5, 1889—Decided January 6, 1890.

1. The rule of Marland v. Railroad Co., 123 Pa. 487, and the cases cited therein, that a plaintiff cannot recover if, in spite of what his senses must teach him if he uses them, he steps in front of a moving train, is a rule which will not be relaxed or pared down by exceptions.

2. But it is a rule which, in its nature, is applicable only to clear cases; and where, in an action against a railroad company for negligently causing the death of plaintiff's husband, there is any doubt of the negligence of the deceased, it is error to direct judgment of nonsuit.

3. Where the plaintiff's witnesses testified as to the circumstances of the

Statement of Facts.

accident, it was not error to permit the defendant to cross-examine them as to the presence and gestures of the track-foreman immediately preceding the accident, although not referred to in the examination in chief.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 199 October Term 1889, Sup. Ct.; court below, No. 427 June Term 1888, C. P. No. 1.

On May 4, 1888, service was accepted of a summons in an action of trespass brought by Alice McNeal against the Pittsburgh & Western Railway Company, to recover damages for the death of the plaintiff's husband, charged to the negligence of the defendant company.

At the trial on April 4, 1889, before SLAGLE, J., Edward McNeal, a son of the deceased and of the plaintiff, testified that he was with his father when the accident occurred, and described the circumstances thereof. On cross-examination he was asked:

Q. When you approached the crossing, did you see the section foreman there, who was engaged at work on the track?

Objected to, as not cross-examination.

By the court: Objection overruled.[3]

A. Yes, sir.

Q. Did you see him wave at your father with his hand to signify to him to stop? A. I saw him wave, but I did not know what he was waving at; for us, or at the men.

Alexander Moeser, called for the plaintiff, also testified as to the circumstances surrounding the accident. On cross-examination he was asked:

Q. Ask him if he saw the section foreman waving at McNeal at that time.

Objected to, as not cross-examination.

By the court: Objection overruled.[4]

A. I saw him, but I don't know whether it was for McNeal or for the engineer.

Q. What did the section foreman do, when McNeal got up to the track? A. When the wagon was on the track, he waved.

Q. That is, the section foreman waved? A. Yes, sir.

After other testimony showing the facts sufficiently appearing in the Opinion of Court below, post, the plaintiff rested,

when, on motion of defendant's attorneys, the court entered judgment of nonsuit, with leave, etc.

A rule to show cause why the judgment of nonsuit should not be lifted, having been argued before the court in banc, on April 10, 1889, the following opinion was filed, SLAGLE, J.:

This was an action by Alice McNeal, widow of Henry Mc-Neal, to recover damages for the death of her husband caused by the alleged negligence of the defendant company.

The decedent's death was caused by an accident at a crossing of the railroad, about 1,000 feet above Witmer station. The road is the main outlet for a large extent of country, and, though some distance from the city, has considerable travel over it. The railroad crosses it at grade, and just below the crossing has a short curve around a hill which somewhat obstructs the view. A person near the track is not able to see more than 150 feet. The evidence showed that the train was running at express speed, about 30 miles an hour. Several witnesses testified that they heard a whistle below Witmer station, about 1,000 feet, but heard no whistle after passing that station. As to the negligence of the defendant company, this testimony should have been submitted to the jury, and therefore it may be assumed that there was negligence on part of the defendant.

The testimony further showed that the deceased was driving a two-horse team, one of the horses being young. His son was with him in the wagon, and a Mr. Reis was driving immediately behind him. These both testified as to the facts substantially the same. At the distance of about 50 feet from the track they heard the whistle of the train, presumably below Witmer station, about 2,000 feet from the crossing. The deceased stopped and then drove on. As he drove toward the track, a foreman of a gang of workmen, who was standing near the track, motioned, whether to deceased or not, the witnesses would not say, but looking towards them. Just as the horses came to the track they saw the train, and the young horse became restive. Though they did not stop, it checked their speed. The son got out of the wagon to the rear, and the engine struck it about the forward wheel, killing Mr. Mc-Neal. Reis remained where he first stopped.

As the son of deceased and Mr. Reis heard the whistle, and deceased stopped immediately afterwards, it is a necessary presumption that deceased also heard the whistle and knew that a train was approaching. If he had remained there he would have been perfectly safe, and in any ordinary circumstance would have lost but a minute or two of time. He chose to drive on. Plaintiff's counsel allege that he stopped again before going on the track. We do not so understand the evidence. He should have done so. If he did stop he should have also looked and listened. Looking, he could have seen about 150 feet; and listening, he could have heard the train a greater distance. According to his son, the horses saw the train just as they came to the track, and the engine struck them just as the horses were leaving the track upon the other side. If deceased was driving at an ordinary rate, it is evident that the train was sufficiently near to be heard and seen, if he had stopped before driving on the track, and looked and listened. This case seems to fall within the principles laid down in Marland v. Railroad Co., 123 Pa. 487, and the cases there referred to. The motion to take off the nonsuit is therefore refused.

The plaintiff thereupon took this appeal specifying that the court erred, 1, 2. In entering the judgment of nonsuit, and discharging the rule to lift said judgment. 3, 4. In admitting defendant's offers, 3, 4.

*Mr. Samuel McClay* and *Mr. M. A. Woodward*, for the appellant.

Counsel cited: Penna. R. Co. v. Coon, 111 Pa. 440; Crissey v. Railway Co., 75 Pa. 86; West Chester etc. R. Co. v. McElwee, 67 Pa. 315; Longenecker v. Railroad Co., 105 Pa. 328; Bonnell v. Railroad Co., 39 N. J. 192; Penna. R. Co. v. Ogier, 35 Pa. 71; Lehigh V. R. Co. v. Brandtmaier, 113 Pa. 616.

*Mr. Johns McCleave*, for the appellee.

OPINION, MR. JUSTICE MITCHELL:

The facts, as we gather them from the testimony, are that McNeal heard the whistle, and stopped his team at about 50 feet from the track. Presumably, he looked and listened, but

it is undisputed that, on account of the curve of the railroad
and an intervening hill, he could have seen but a short distance;
and the evidence is that no further whistle or other warning
was given, and whether he could have heard the rattle of the
approaching train from that point is not certain. After stop-
ping, and, as said, presumably looking and listening, he drove
on again; and just at or before reaching the track, there is some
evidence that he stopped again, or attempted to do so, but, one
of his horses being young and excitable, he either drove or was
carried on the track, and the wagon was there struck at about
its centre by the locomotive, cut in two, the front part and the
horses, uninjured, being thrown on one side of the track, and
the back part of the wagon on the other, and McNeal killed.
There was also evidence that the foreman of a gang of work-
men at that point had made gestures in McNeal's direction, but
whether intended for McNeal or for the workmen was not clearly
understood by the witnesses. On this evidence the learned
judge entered a nonsuit on the ground of contributory negli-
gence, being of opinion that the case came within Marland v.
Railroad Co., 123 Pa. 487, and the other cases which hold that
a plaintiff cannot recover if, in spite of what his senses must
teach him if he uses them, he steps in front of a moving train.

Carroll v. Railroad Co., 12 W. N. 348, and the decisions which
have followed it, are sound in principle, and experience has con-
firmed the wisdom of the rule there adopted. It will not be
relaxed nor pared down by exceptions. But it is a rule which,
in its nature, is applicable only to clear cases. If, on the evi-
dence, there is any doubt of the plaintiff's negligence, the case
must go to the jury. Such a doubt there is in this case. That
McNeal was not driving with absolute recklessness, but was
paying some attention to his situation, is clearly shown by his
stop when he heard the whistle. Just what his intention was
in driving on again is not clear. The whistle was in fact more
than 1,000 feet away, and between it and the crossing in front
of McNeal was a station, at which trains, including this train
in question, usually stopped. As already said, the view of the
track from that point was extremely limited. McNeal may
have recognized the distance of the whistle, and assumed that
the stop at the intervening station would give him time to cross;
or, failing to locate the whistle, he may have intended to drive

closer to the track, and make a second stop, of which there is some evidence, though by no means clear. Reis, the other teamster, stopped at the same point, and prudently waited till the train had passed. McNeal drove on, unfortunately, as the result showed, but whether negligently or not depends on the view which may be taken of the circumstances and of his action. If he recognized the approach of the train, and chose to take the risk of the crossing, or if prudence or proper care required that, owing to the doubt, he should remain in safety, as Reis did, then certainly he was negligent; but this conclusion is not so clear that the court can say, as matter of law, that it is the only one to be drawn in the case.

The third and fourth assignments of error cannot be sustained. The questions were upon what might be a material part of the res gestæ, and the omission of the witnesses who were testifying about the occurrence to mention the action of the foreman, whether intentional or accidental, did not make it new matter belonging to the defence.

Judgment reversed, and venire de novo awarded.

Argued November 5, 1889—Decided January 6, 1890.