812 A.2d 478

**LEON E. WINTERMYER, INC. and American General Group, Appellants**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (MARLOWE), Appellees**

**Penn National Insurance Co., Intervenor.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 2001.

Decided Dec. 10, 2002.

Scott Alan Fleischauer, Hunt Valley, MD, for Lorne G. Seifert and PMA Group, defendant.

Robert Burke McLemore, Harrisburg, for Wintermyer, Inc. and American General Group, Appellants.

James A. Holzman, Harrisburg, Amber Marie Kenger, Mechanicsburg, for W.C.A.B., appellee.

David Bruce Hanes, Philadelphia, for Linda Marlowe, appellee.

Mary T. Uhlig, Philadelphia, Steven R. Tregea, State College, for Penn Nat. Ins. Co., Intervenor.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

This appeal concerns the application, in the administrative law setting, of what has been termed the capricious disregard standard of appellate review.

In November of 1993, Linda Marlowe ("Claimant") filed a claim petition seeking benefits against Leon E. Wintermyer, Inc. ("Employer"), and its insurer, American General Group, pursuant to the Workers' Compensation Act.[1] Claimant alleged that, in March of 1993, she sustained an injury— bilateral carpal tunnel syndrome ("CTS")—in the course and scope of her employment primarily as a bookkeeper. On the same day, Claimant also asserted a claim against her previous employer, Lorne G. Seifert, Inc. ("Seifert"), alleging that her clerical duties at that company contributed to her injury. Employer filed a joinder petition against Seifert for the same reason and, subsequently, filed a second joinder petition, contending that any injury occurred while Claimant worked for another company, H & R Block, as a tax preparer.[2]

The WCJ treated the petitions on a consolidated basis for purposes of hearing and decision. The parties stipulated that Claimant's work with Employer spanned the fall of 1991 through mid–1993; her job with Seifert from 1987 through 1990; and her seasonal employment with H & R Block several months in 1991 (full time), as well as in 1992 through 1993 (part time). Claimant testified that her duties for all employers included substantial periods of repetitive hand motion, particularly typing and computer keyboarding; she experienced tingling and numbness in her fingers and right arm in December of 1989, while employed by Seifert; she was treated by a chiropractor in 1990 and ultimately referred to a physician, who diagnosed CTS; while working for Employer, she spent seventy percent of her time typing at a computer

1. Act of June 2, 1915, P.L. 736 (*as amended*, 77 P.S. §§ 1—1041.4) (the "Act").

2. This second joinder petition was eventually dismissed because Claimant failed to provide H & R Block with timely notice pursuant to Section 311 of the Act, 77 P.S. § 631.

keyboard; working full time for Employer, her symptoms increased; she came under the care of James A. Yates, M.D., in February of 1992; and it was at such time that she learned that her CTS was work related.

Claimant also presented Dr. Yates' testimony via deposition transcript. His description concerning onset and treatment of the CTS was consistent with Claimant's; further, he explained that he performed several surgical procedures in 1992 and 1993 to alleviate the symptoms. According to Dr. Yates, Claimant's injury caused permanent nerve damage, and her condition was related to her employment and caused by repetitive motion, including typing, keyboarding, and writing. On cross-examination, Dr. Yates indicated that his opinion concerning work-relatedness was predicated upon the work and medical history provided by Claimant, and that such history was generalized in nature.[3] Dr. Yates also identified a series of other causes for CTS, although he emphasized that repetitive motion activities were the most common source.

Employer presented testimony from its director of human services and the accounting employee who replaced Claimant, both of whom substantially contradicted Claimant's assertions concerning the amount of time that she spent performing data entry on a daily basis. The supervisor testified that the majority of Claimant's work involved working with invoices and other documents, and that she did not spend a great deal of time at a computer terminal. The clerical worker stated that, in performing Claimant's duties, she spent no more than two hours per day on data entry; the remainder of the workday involved non-repetitive tasks; and many days she did

3. For example, the following interchange occurred:
   Q. ... Specifically, Doctor, do you have any clear-cut and specific occupational history as to what [Claimant] did for any given employer at any particular point in time?
   A. Only what she has told me and what her job description was, bookkeeping, et cetera.
   * * *
   Q. ... [Y]ou don't know how much of the day she spent doing X activity versus Y activity, whether there were breaks or anything of that nature?
   A. No, I do not.

not spend any time at a keyboard. Employer did not present an expert medical witness, nor did Seifert present evidence.

In her findings, the WCJ emphasized inconsistencies, conflicts, and vagaries in Claimant's evidence. For example, she contrasted the extensive evidence to the effect that Claimant's difficulties with CTS were longstanding and clearly evident in June of 1990, with a disability claim form submitted to Employer by Claimant indicating that her CTS first appeared in August of 1992; credited the testimony of Employer's witnesses over Claimant's concerning the extent of repetitive motion activity she performed; and emphasized that Dr. Yates was unable to specify any particular event leading to or time of an onset or aggravation of Claimant's injury. The WCJ specifically stated that the testimony of Claimant and Dr. Yates was not credible. Therefore, the WCJ concluded that Claimant failed to sustain her burden of proving that her injury was work related and entered an order dismissing the claim petitions against Employer and Seifert, as well as Employer's joinder petition.

The Workers' Compensation Appeal Board ("WCAB"), however, reversed. Preliminarily, it acknowledged that its review was in an appellate capacity, and it was therefore not its function to weigh the evidence and resolve conflicts, but rather, such role was assigned to the WCJ. Further, the WCAB noted that it was within the WCJ's discretion to accept or reject, in whole or in part, the testimony of any witness, including an expert. Nevertheless, the WCAB indicated that, in instances in which only the party bearing the burden of proof presents evidence and relief is denied, it is appropriate for an appellate tribunal to review an administrative adjudication to ensure that it is free from any capricious disregard of competent evidence. Although acknowledging that Employer presented fact witnesses in rebuttal to Claimant's testimony, the WCAB emphasized that Employer had not presented expert evidence to challenge Dr. Yates' testimony. The WCAB invoked a traditional definition of capricious disregard as "a willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge." The

WCAB then quoted extensively from Dr. Yates' testimony concerning Claimant's injury and his conclusion as to its work relatedness; characterized such testimony as unequivocal; and concluded that the WCJ erred in rejecting it, at least to the extent that it supported an aggravation of a pre-existing condition and/or a repetitive trauma injury. The WCAB therefore remanded the matter to the WCJ, requiring a determination of the date of injury and identification of the liable employer. On remand, the WCJ granted the claim petition for the work period from June 21, 1993, through June 1, 1994, and identified Employer as the liable party. The WCAB subsequently extended this period by fifteen months.

Before a panel of the Commonwealth Court, Employer argued, *inter alia*, that in its initial opinion, the WCAB improperly applied the capricious disregard standard of appellate review, thereby usurping the WCJ's determinations of credibility and evidentiary weight. Like the WCAB, the Commonwealth Court majority emphasized that Employer had not presented medical evidence and, accordingly, also invoked what it termed a capricious disregard standard of review. On such basis, the Commonwealth Court rejected Employer's argument, reasoning:

> In order to make such determination [concerning capricious disregard], the [WCAB] reviewed the medical testimony of record in order to determine if it was equivocal or unequivocal. Such a review required the Board's assessment of the *competency* of the evidence, *not* its *credibility.* Thus, Employer is mistaken in its assertion that the [WCAB's] assessment of the *competency* of the medical evidence of record was an evaluation of its credibility and evidentiary weight.

(emphasis in original). After resolving additional questions raised by Employer, the Commonwealth Court affirmed the WCAB's order in a memorandum opinion, remanding the matter for reasons unrelated to the present appeal.

Judge Friedman concurred in the result but wrote separately to express her belief that the WCAB should not have applied a capricious disregard review standard, but rather, should have employed a substantial evidence test. She rea-

soned that the court's precedent clearly established that re-
view for capricious disregard applied in the limited circum-
stance in which the burdened party does not prevail and was
the sole presenter of evidence. Judge Friedman noted a
conflict in authority concerning the application of the review
standard in cases in which only the burdened party presents
medical evidence but both parties present lay testimony or
other non-medical evidence. *Compare Iacono v. WCAB
(Chester Housing Auth.)*, 155 Pa.Cmwlth. 234, 624 A.2d 814
(1993), *aff'd per curiam*, 536 Pa. 535, 640 A.2d 408 (1994), *with
Tomczak v. WCAB (Pro–Aire Transport, Inc.)*, 150 Pa.
Cmwlth. 431, 615 A.2d 993 (1992). Citing to *Iacono*, Judge
Friedman concluded that the controlling position is that, when
both parties present evidence before the factfinder, however
limited (there being no requirement that such proof include
medical evidence), an appellate court must apply the substan-
tial evidence standard to the exclusion of review for capricious
disregard. *See Iacono*, 155 Pa.Cmwlth. at 240, 624 A.2d at
816–17.[1] According to Judge Friedman, Employer's presenta-
tion of factual testimony concerning the nature of Claimant's
job duties removed the matter from the purview of capricious
disregard review. Judge Friedman also chastised the majori-
ty for taking a position that unnecessarily confused what she
viewed as a "clear-cut legal determination," and adopting an
analysis that was both unnecessary and impractical. In this
regard, Judge Friedman explained:

> The effect of the majority's opinion is that the standard of
> review must be decided separately for each issue raised
> within a single case. Former President Judge Craig point-
> ed out the burdensome nature of this approach in *Herbert v.
> [UCBR]*, 131 Pa.Cmwlth. 601, 571 A.2d 526 (Pa.
> Cmwlth.[1990)], stating that if this court had to apply differ-

---

**4.** Judge Friedman also referred to other cases in which inconsistent
standards were applied, including *Crenshaw v. WCAB (Hussey Copper)*,
165 Pa.Cmwlth. 696, 645 A.2d 957 (1994), in which the court applied
the standard as articulated in *Iacono*, and *Tynan v. WCAB (Associated
Cleaning Consultant and Services, Inc.)*, 162 Pa.Cmwlth. 393, 639 A.2d
856 (1994), and *Van Duser v. UCBR*, 164 Pa.Cmwlth. 96, 642 A.2d 544
(1994), in which the court did not consistently apply *Iacono*'s formula-
tion.

ent standards depending upon whether only one or more parties produced evidence on a specific issue within a case, unworkable complications would result.... Because testimony on one issue can, and often does, impact to some extent on a different issue, or issues, in the same case, the parties could end up battling over pieces of evidence and their relevance to individual issues. This could require us to perform an extensive analysis of the evidence and to decide the question of the appropriate standard several times in a single case before we could address the issues raised in the case. There is no need for this court to invite such difficulties, and I would hope that we could avoid such inquiries in the future.

Finally, Judge Friedman referenced the reasoned decision requirement of Section 422(a) of the Act, 77 P.S. § 834,[5] the application of which, in her view, would eliminate the need for a separate inquiry concerning capricious disregard.

This Court granted limited review to revisit aspects of the standard governing appellate review of administrative agency adjudications in light of continuing differences among jurists concerning its appropriate composition.

5. Section 422(a) states:

Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which [he] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

Preliminarily, we note that courts do not rigidly employ precise verbiage in applying governing standards of review, but rather, frequently use differing terms, since the effort is to capture a conceptual manner of review. *See generally* Jeffrey P. Bauman, *Standards of Review and Scopes of Review in Pennsylvania—A Primer and Proposal,* 39 DUQ. L. REV. 513 (Spring 2001). Nevertheless, in the area of administrative agency review, judges have sometimes described fundamentally different and irreconcilable concepts, as illustrated by the division of the Commonwealth Court panel in the present case. Indeed, in a few instances in this arena, unfortunately, form has overcome substance, causing confusion. We emphasize, at the outset, that the intermediate appellate courts cannot be greatly faulted in this regard, since several of this Court's own decisions reflect such fundamental inconsistencies. While recently, Madame Justice Newman, writing for a unanimous Court, articulated the essential concepts, *see Fraternal Order of Police v. PLRB,* 557 Pa. 586, 593–94, 735 A.2d 96, 99–100 (1999), it is apparent that vestiges of prior difficulties remain. A critical review of the historical development in Pennsylvania of what is now termed the capricious disregard standard of review serves to illustrate the difficulty, but more affirmatively, in conjunction with *Fraternal Order of Police,* to provide a framework for alignment.

For many years, the general standards governing appellate review in the administrative setting included a component of review for capricious disregard of evidence,[6] in addition to the equally well established review for errors of law and manifest abuse of discretion. *See Gaudenzia, Inc. v. Zoning Bd. of Adjustment of Phila.,* 4 Pa.Cmwlth. 355, 363–64, 287 A.2d 698,

---

**6.** *See, e.g., Cairgle v. American Radiator & Standard Sanitary Corp.,* 366 Pa. 249, 252, 77 A.2d 439, 440 (1951) (explaining that "unless there is a capricious disregard of relevant, credible testimony, the findings of fact by the referee, adopted or affirmed by the Board, if based upon adequate and competent evidence, will be sustained on appeal" (citations omitted)); *Greap v. Oberdorff,* 178 Pa.Super. 153, 157–58, 113 A.2d 339, 341 (1955) ("The credibility of witnesses and the weight to be attached to their testimony is for the compensation authorities and not for the court[;] [o]f course there may not be a capricious disregard of competent evidence.").

702–03 (1972) (citing *Blumenschein v. Pittsburgh Housing Auth.*, 379 Pa. 566, 572–73, 109 A.2d 331, 334 (1954)). Review for capricious disregard clearly applied in cases in which evidence was presented by respective parties to support both a claim and defenses, *see, e.g., Greap*, 178 Pa.Super. at 157–58, 113 A.2d at 341, although in such circumstances, relief would infrequently be warranted, since the agency was to be accorded great deference in terms of its resolution of conflicts in the evidence and credibility determinations.[7] As regards decisions unfavorable to the burdened party, review for capricious disregard assumed a more visible role, since, in such matters, the adjudication need not necessarily rest upon affirmative factual findings, but rather, could also be predicated upon the agency's disbelief of the claimant's evidence (i.e., a negative finding or conclusion).[8] In such instances, Pennsylvania ap-

---

7. As the Commonwealth Court has observed:

   [T]he referee has a critical fact finding role; he alone hears the testimony and observes the witnesses firsthand. In proceedings pertaining to benefits, therefore, it is for the referee to determine the credibility and weight of the evidence. In exercising that broad discretion, he may accept or reject the testimony of any witness in whole or in part. This includes the testimony of expert medical witnesses.

   *Container Corp. of America v. WCAB*, 59 Pa.Cmwlth. 367, 372, 429 A.2d 1264, 1265 (1981); *see also Phillips v. WCAB (Century Steel)*, 554 Pa. 504, 507, 721 A.2d 1091, 1092 (1999) (as fact finder, the WCJ is free to reject the testimony of any witness, including a medical witness, in whole or in part, even where that testimony remains uncontradicted). *See generally Borough of Tyrone v. UCBR*, 52 Pa.Cmwlth. 18, 21, 415 A.2d 146, 148 (1980) (explaining that "[t]o accord greater credibility to one witness' testimony than to that presented by others is simply a manifestation of the Board's fact-finding role and does not constitute a capricious disregard of evidence"); *Aluminum Co. of America v. WCAB*, 33 Pa.Cmwlth. 33, 38, 380 A.2d 941, 943 (1977).

8. In this regard, we note that the unburdened party has no obligation to present any proof, and may prevail if the burdened party's evidence, while credible, is insufficient. *See Inglis House v. WCAB (Reedy)*, 535 Pa. 135, 141, 634 A.2d 592, 594 (1993). *See generally Barrett v. Otis Elevator Co.*, 431 Pa. 446, 450, 246 A.2d 668, 670–71 (1968); *Walsh v. Penn Anthracite Mining Co.*, 147 Pa.Super. 328, 333, 24 A.2d 51, 53 (1942) (stating that "[w]here the decision of the board is against the party having the burden of proof—in this case, the claimant—bearing in mind that a trier of fact is not required to accept even uncontradicted testimony as true, the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions

pellate courts often emphasized that their task was not to determine whether there was competent evidence that would support the requested relief (since it was denied), but rather, if there was capricious disregard in the refusal. *See, e.g., Yanofchick v. State Workmen's Ins. Fund,* 174 Pa.Super. 182, 187, 100 A.2d 387, 389 (1953).

With the promulgation of the Administrative Agency Law in 1978,[9] the General Assembly identified express criteria for review which it directed would generally govern appeals from agency adjudications. *See* 2 Pa.C.S. §§ 701, 704. Section 704 of the Administrative Agency Law, governing the disposition of appeals, provides, *inter alia,* as follows:

After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. § 704.

Subsequently, in light of such statutory formulation, this Court criticized the Commonwealth Court's adherence to a traditional statement of the appellate standard of review in an administrative context that included, as a component, review for capricious disregard. *See McGovern's Estate v. State Employees' Retirement Bd.,* 512 Pa. 377, 381–82, 517 A.2d 523, 525 (1986). Further, in fairly cryptic terms, *McGovern* directed that it was no longer ever appropriate for appellate courts to apply a capricious disregard component in agency review.[10]

of law and its order, and can be sustained without a capricious disregard of the competent evidence" (citation omitted)).

9. Act of April 28, 1978, P.L. 202, No. 53 (*as amended* 2 Pa.C.S. §§ 501– 508, 701–704).

10. In *McGovern,* the Court framed the issue on appeal as follows:

Commonwealth Court reversed the Board, holding that it capriciously disregarded the evidence .... We granted allocatur to examine

Nevertheless, within a year, this Court again described a standard of review subsuming examination for capricious disregard as applicable to review of agency adjudications unfavorable to the burdened party. *See Odgers v. UCBR*, 514 Pa. 378, 390, 525 A.2d 359, 365 (1987) ("The standard of review any appellate court must apply where the party with the burden of proof lost before the [agency], is whether the [agency] erred as a matter of law or capriciously disregarded competent evidence.").

In *Russell v. WCAB (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988), the Commonwealth Court undertook to reconcile *McGovern* with *Odgers* and other of this Court's later statements. The court attempted to remain faithful to *McGovern*, indicating that its reading of Section 704 must unquestionably be applied to agency proceedings in which both parties present evidence. *See Russell*, 121 Pa. Cmwlth. at 438, 550 A.2d at 1365. Although *Russell* is not explicit in this regard, it also appears that the Commonwealth Court believed that the interpretation also had to be applied generally to cases in which an adjudication was against the burdened party, since that was *McGovern*'s fact paradigm. Nevertheless, the Commonwealth Court was concerned that strict application of *McGovern* to the discrete situation where a burdened party is the only party to present evidence and does not prevail before the agency would leave a substantial void in the review process. In such matters, *Russell* noted

whether Commonwealth Court applied the appropriate standard of review . . . .

*McGovern*, 512 Pa. at 381, 517 A.2d at 525. *McGovern* then quoted the Commonwealth Court's traditional statement of the appellate standard of review in cases in which the agency's adjudication reflects a determination that the party bearing the burden of proof has failed to carry it, including the capricious disregard component, followed by a quotation of Section 704. *See id.* at 382, 517 A.2d at 525. Without further analysis, the Court concluded:

Because the standard of review articulated by the Commonwealth Court finds no support in the [Administrative Agency Law], we hold that Commonwealth Court's review of the present case was conducted pursuant to an improper and illegal standard.

*Id.*

that application of the substantial evidence component of Section 704 was inapt:

> If no evidence was presented to support the prevailing party, there is no evidence upon which to apply the "substantial evidence" test; *i.e.*, it is impossible to find substantial evidence to support a position for which no evidence was introduced. In such cases, therefore, the appropriate scope of review, as set forth in ... *Odgers,* is whether the agency erred as a matter of law or capriciously disregarded competent evidence.

*Russell,* 121 Pa.Cmwlth. at 438–39, 550 A.2d at 1365. The Commonwealth Court subsequently characterized this review standard, which it has deemed applicable strictly in this discrete setting, as its capricious disregard standard of review. *See, e.g., Linko v. WCAB (Roadway Express, Inc.),* 153 Pa. Cmwlth. 552, 557, 621 A.2d 1188, 1190 (1993).

The Commonwealth Court's effort in *Russell* was salutary in that it preserved essential judicial review for capricious disregard in at least one category of cases, and the formulation has been applied regularly. *See id.* The difficulty with the approach, however, is that agencies are not foreclosed from making affirmative factual findings in matters decided against the claimant. There are many instances in which agencies predicate negative conclusions (for example, that a party failed to meet his burden of proof) upon affirmative facts adduced from the claimant's testimony and evidence, to include cross-examination. In such cases, Section 704 review for substantial evidence applies to all affirmative findings that are necessary to support the adjudication. *See* 2 Pa.C.S. § 704 ("the court shall affirm the adjudication unless it shall find that ... any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence"). Conversely, it is troubling to suggest that the General Assembly intended for judicial review to be simply unavailable in an instance in which substantial evidence supported the agency's factual findings, but where it was clear beyond doubt that its conclusions were based upon capricious disregard of other evidence. Such a situation would occur, for example, if the

agency expressly refused to resolve conflicts in the evidence and make essential credibility determinations.[11] Additionally, given the inadequate foundation upon which the exception allowing for review for capricious disregard was crafted, fractured opinions have developed concerning the appropriate manner of its application, as again illustrated by this case.

As noted, *Fraternal Order of Police* clarified the appellate standard of review applicable in the administrative agency setting. *See Fraternal Order of Police*, 557 Pa. at 593, 735 A.2d at 99–100. Although its focus was directed to the component of Section 704 review requiring that agency conclusions must be "in accordance with law," Justice Newman's core explanation is highly relevant:

> While [the in-accordance-with-law] standard has been described in a number of ways, its essential import is to establish limited appellate review of agency conclusions to ensure that they are adequately supported by competent factual findings, *are free from arbitrary and capricious decision making,* and, to the extent relevant, represent a proper exercise of the agency's discretion.

*Id.* at 593, 735 A.2d at 99 (citing *Slawek v. Commonwealth, State Bd. of Med. Educ. and Licensure,* 526 Pa. 316, 322, 586 A.2d 362, 365 (1991)). In further emphasizing the deferential character of the process, the Court explained that appellate courts are not free to invoke a generalized conception of reasonableness in order to substitute their judgment for that of an agency. *See id.* Nevertheless, recognition was also given to the boundaries of such discretion, as the Court explained that it remains within the purview of reviewing courts to consider whether a reasonable mind might make the same decision on the evidence before the agency. *See id.* at 593, 735 A.2d at 100 (citing *Williams v. Commonwealth, State*

11. *Cf. Hamilton v. Procon, Inc.,* 434 Pa. 90, 99, 252 A.2d 601, 605 (1969) (stating, as a general proposition, that factual findings can be disturbed "if there has been a capricious disregard of competent evidence or if there is no evidence at all to support the finding"); *In re Patterson's Estate,* 333 Pa. 92, 93, 3 A.2d 320, 321 (1939) (characterizing a trial court's findings as "worthless" where there is a capricious disbelief of evidence).

*Civil Serv. Comm'n,* 457 Pa. 470, 473, 327 A.2d 70, 72 (1974)). This, of course, overlaps with and, indeed, subsumes the traditional description of the "capricious disregard" facet of review.[12] Indeed, in cases in which there has been a capricious disregard of competent, material evidence, the error is not only legal but structural and, pursuant to legislative design and long-standing principles, requires correction.

■ Since an adjudication cannot be in accordance with law if it is not decided on the basis of law and facts properly adduced, we hold that review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court.[13] As at common law, this review will generally assume a more visible role on consideration of negative findings and conclusions.[14] Even in such

12. *See, e.g., Arena v. Packaging Sys. Corp.,* 510 Pa. 34, 38, 507 A.2d 18, 20 (1986) (describing capricious disregard as a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result); *Kania v. Ebensburg State Sch. and Hosp., DPW,* 49 Pa.Cmwlth. 136, 138, 410 A.2d 939, 940 (1980) ("A capricious disregard amounts to a willful or deliberate ignorance of evidence which a reasonable person would consider important.").

Although *McGovern* failed to acknowledge that review for capricious disregard is merely one sub-component of review for whether an adjudication is in accordance with law, the soundness of the disposition of the case is not in doubt. There, the Commonwealth Court erroneously discerned a capricious disregard of the evidence in an adjudication in which, not only was the central finding a negative one in the sense that the claimant had failed to sustain his burden of proof, but also, there appears to have been substantial evidence of record offered by the opposing party to support the contrary agency determination. *See McGovern,* 512 Pa. at 383–84, 517 A.2d at 525–26 (detailing such evidence). It is a quite different thing, nonetheless, to say that the capricious disregard standard is not met than that it should not be applied, and *McGovern* should not have suggested the latter.

13. In light of the above, the exception crafted in *Russell* and reconciliation of its various permutations is no longer necessary. Indeed, as Judge Friedman noted, the General Assembly's emphasis upon a reasoned decision in the amendments to Section 422(a) of the Act evidences its intention that an appellate court must conduct its review in a manner that ensures that the agency has not exceeded its fact-finding role or the outer limits of its discretion.

14. It bears repeating that, where there is substantial evidence to support an agency's factual findings, and those findings in turn support the

context, however, this limited aspect of the review serves only as one particular check to assure that the agency adjudication has been conducted within lawful boundaries—it is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority.

Since review for capricious disregard was an appropriate function of the Commonwealth Court and the WCAB in the present case, it remains only to consider whether those tribunals were correct in their conclusion that the WCJ had exceeded the boundaries of her decision-making authority.

■ After an extensive recitation of Dr. Yates' testimony, the WCAB summarily concluded that, because such testimony was unequivocal, the WCJ must have capriciously disregarded it in denying benefits. In reaching this decision, the WCAB failed to acknowledge that the WCJ based her disbelief upon the countervailing evidence presented by Employer pertaining to the nature of Claimant's work and the degree to which she engaged in repetitive motion activities on a daily basis. Dr. Yates acknowledged that his assessment of work relatedness was dependent upon the character and intensity of Claimant's activities at work, as related to him by Claimant. Therefore, the fact that Employer did not present medical testimony in rebuttal is not necessarily dispositive. Moreover, while the Commonwealth Court majority was correct in concluding that the WCAB addressed competency and not credibility, it erred in treating this distinction as controlling. To support its determination of capricious disregard in the circumstance of a negative finding, the Commonwealth Court should have considered the impact of Employer's non-medical evidence.

We do acknowledge that, due to vagaries in the proofs, this is a close case, since uncontradicted, competent evidence was offered to establish the fact of the injury as well as Claimant's performance of potentially aggravating activities during her tenure with Employer. Nevertheless, the conflicts in the evidence were substantial and could reasonably have been

conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard.

viewed by the WCJ, consistent with her explanation, as detrimental to Claimant's overall credibility. It is most significant in this case, then, that the sole evidence of times of injury onset and aggravation derived from Claimant's accounts and testimony, and that Claimant's credibility was therefore an essential linchpin to the central question of work relatedness.

Since a determination of capricious disregard was unwarranted in this case, the orders of the WCAB and Commonwealth Court are reversed, and the matter remanded for reinstatement of the initial order of the WCJ.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Chief Justice ZAPPALA, and MADAME Justice NEWMAN file concurring opinions.

Justice CAPPY files a concurring opinion in which Justice NIGRO joins.

ZAPPALA, Chief Justice, concurring.

I concur in the result reached by the majority. Simply put, the Workers' Compensation Judge (WCJ) credited the testimony offered by Employer regarding the nature of Claimant's duties and found the testimony of Claimant and her medical expert incredible. Having found that Employer's evidence rebutted the factual predicate upon which Claimant's medical expert based his opinion, the WCJ concluded that Claimant failed to sustain her burden of proving that she suffered carpal tunnel syndrome *during the course and scope of her employment.* Thus, the Workers' Compensation Appeal Board and the Commonwealth Court erred in awarding workers' compensation benefits based on the ground that the WCJ capriciously disregarded Claimant's medical evidence. The fact that Employer presented factual evidence as opposed to medical evidence does not alter the analysis.

As to the application of the capricious disregard standard in the appropriate case, I would adhere to the case law holding that such standard applies only where the party with the

burden of proof is the sole party to present evidence, yet does not prevail before the fact finder. *See Russel v. Workmen's Compensation Appeal Board,* 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988) (holding that if no evidence was presented to support the prevailing party, there is no evidence upon which to apply the "substantial evidence" test and therefore the "capricious disregard" standard applies). The majority finds difficulty with this approach and states that "it is troubling to suggest that the General Assembly intended for judicial review to be simply unavailable in an instance in which substantial evidence supported the agency's factual findings, but where it was clear beyond doubt that its conclusions were based upon capricious disregard of other evidence." Majority opinion at 13. I do not share this concern because if substantial evidence exists to support the factual findings of the WCJ, the appellate tribunal should not delve into whether the WCJ capriciously disregarded "other evidence."

I also do not view this Court's decision in *Fraternal Order of Police v. PLRB,* 557 Pa. 586, 735 A.2d 96 (1999), as altering the capricious disregard standard. The majority concedes that *Fraternal Order of Police* did not involve such standard, but rather addressed the "in accordance with law" standard of review of administrative decisions. Majority opinion at 14. Finally, I would refrain from expanding the application of the capricious disregard standard, even on a limited basis, in a case where the factual predicate does not warrant it.[1]

CAPPY, Justice, concurring.

I join the majority opinion. I write separately for two reasons: first, to clarify my understanding of the proper place for the capricious disregard standard in the overarching statutory framework that governs appellate review of an agency's

---

1. The majority specifically holds that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." Majority opinion at 15. I believe that such questions are only "properly before the court" when the party with the burden of proof is the sole party to present evidence, yet loses before the fact finder.

adjudication, and second, to emphasize the narrow circumstances in which review for a capricious disregard of the evidence will lead to the reversal of an agency's decision.

To set forth my understanding of where review for a capricious disregard of the evidence fits within the spectrum of appellate review, a brief discussion of the statutory framework governing appellate review of an agency adjudication is required. The legislature has narrowed the sphere of an appellate court's review of an agency's decision to four distinct and separate bases for reversal:

> After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 [relating to practice and procedure of Commonwealth agencies] have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. § 704 (explanation supplied). Thus, the statute, viewed as setting forth an overarching framework in which to conduct appellate review, limits appellate review of an agency's adjudication to: (1) constitutional determinations; (2) legal conclusions; (3) procedural regularity; and (4) findings of fact.[1]

In this appeal there is neither an assertion that the agency violated the constitutional rights of the Appellant nor a claim of irregular procedure in the agency proceedings. Therefore, only two of these four areas of review have been raised. Assertions have been raised regarding the legal conclusions reached by the workers' compensation judge and it has been suggested that issues regarding findings of fact are implicated as well.

**1.** *See generally,* Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking,* 2 J. App. Prac. & Process 47, 47–49 (2000)(dividing appellate review into three parts: review of facts, review of law, and review of discretion, each with varying level of deference to the action or decision under review).

As to legal conclusions, section 704 states that an appellate court may review the agency decision to determine whether the adjudication is "in accordance with law." Recently, our court has clarified the contours of an "in accordance with law" review. *Fraternal Order of Police v. PLRB*, 557 Pa. 586, 735 A.2d 96 (1999). The "essential import is to establish limited appellate review of agency *conclusions* to ensure that they are adequately supported by competent factual findings, are free from arbitrary or capricious decision making, and to the extent relevant, represent a proper exercise of the agency's discretion." *Id.* at 99 (emphasis supplied).

Thus, review for whether an agency's legal conclusions are "in accordance with law" consists of at least three distinct facets. Stated another way, *FOP* sets forth certain inquiries to be applied in the appropriate situation: (1) whether the legal conclusions are supported by competent factual findings; (2) whether the legal conclusions were made in an arbitrary and capricious fashion; and/or (3) whether the legal conclusions were an abuse of discretion.

As to findings of fact, section 704 offers that an appellate court must affirm the agency's adjudication, unless the appellate court determines that "any *findings of fact* made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa.C.S. § 704 (emphasis added). The statute itself provides the standard of review appropriate for findings of fact: the inquiry regarding an agency's affirmative factual findings is whether they are supported by substantial evidence.

With this background, I write to clarify my understanding of the placement of review for a capricious disregard of the evidence within this framework because I believe there to be some confusion or disagreement into which statutory area a capricious disregard review falls. I am persuaded that while a capricious disregard review has as a component consideration of the evidence offered at a hearing, it is not an inquiry regarding an agency's affirmative findings of fact. Rather, it is a review of the agency's legal conclusions to determine whether in making those legal conclusions, the agency capri-

ciously disregarded evidence of record that would have clearly and beyond doubt commanded a different result. Being a review of legal conclusions, consideration of whether a tribunal capriciously disregarded evidence is a component of the in accordance with law review.

This conclusion is consistent with, and supported by, our decision in *FOP*. As stated in *FOP*, an appellate court will review to determine if the agency's *conclusions* are, *inter alia,* free from arbitrary and capricious decision making. *FOP*, 735 A.2d at 99. As the majority in this appeal explains, the concept of legal conclusions being free from arbitrary and capricious decision making, and the related concept of the legal conclusions being reasonable, "overlaps with and, indeed, *subsumes* the traditional description of the 'capricious disregard' facet of review." Majority Op. at 487 (emphasis supplied); *id.* n. 13 (capricious disregard sub-component of in accordance with law). Simply stated, if an agency capriciously disregards evidence in reaching its legal conclusions, its adjudication is capricious, and thus, not in accordance with law. It therefore cannot be affirmed. 2 Pa.C.S. § 704.[2]

In sum, it is my understanding that review for a capricious disregard of the evidence, at its core, does not entail consideration of the agency's affirmative *finding* of facts, but instead goes to a review of the agency's legal *conclusions.*[3] It "is not

**2.** It is for this reason that I cannot agree with Madame Justice Newman's contention that review for a capricious disregard of evidence is not the application of a standard of review, but a legal conclusion. I believe that it can be conceptualized as both. Specifically, while not all standards of review describe a standard and a legal conclusion (see the *de novo* standard of review applicable to pure questions of law), other standards do have a dual meaning. The standard of review described as an "abuse of discretion" sharpens the point. An appellate court may review a trial court's admission of evidence to determine if the trial court committed an abuse of discretion. The standard of review is the "abuse of discretion" standard. If the appellate court determines the trial court erred, the legal conclusion is that the trial court "abused its discretion."

**3.** The concept of appellate review for whether an agency's *conclusions* are supported by "substantial evidence" has become part of the appellate court lexicon. *See Wilson Area School District v. Easton Hospital,* 561 Pa. 1, 747 A.2d 877, 879 (2000) (*decision* is supported by substantial evidence); *Mallios v. Pa. State Police, Bureau of Liquor Control*

only legal but structural and, pursuant to legislative design and long-standing principles, requires correction." Majority Op. at 487.

Second, while I believe that review for whether the agency's legal conclusions were made by a capricious disregard of the evidence is an appropriate appellate function, I, like the majority, recognize that such review has the potential for abuse. Thus, I emphasize that reversal by an appellate court of an agency's determination by application of the capricious disregard standard will be the exceptional case. As stated by the majority, "where there is substantial evidence to support an agency's factual findings [in accord with section 704], and those findings in turn support the [legal] conclusions [in accord with *FOP*], it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." Majority Op. at 487 n. 14 (comments added). More precisely, reversal based on this type of review should occur only where it is "clear beyond doubt" that an agency's legal conclusions were based upon capricious disregard of evidence—a very high bar. *Id.* at 486. As suggested by the majority, this might occur if "the agency expressly refused to resolve conflicts in the evidence and make essential credibility determinations." *Id.* It might also be the case where the agency completely ignores overwhelming evidence

*Enforcement*, 534 Pa. 616, 633 A.2d 1163, 1165 (1993)(whether *order* of Board is supported by substantial evidence). Use of the "substantial evidence" verbiage to describe both review of an agency's affirmative findings of fact *and* review of an agency's legal conclusions unnecessarily confuses matters. I believe it far more desirable to keep the inquiry regarding findings of fact distinct from the inquiry regarding conclusions of law and to use distinct terms with respect to each area. To keep the inquiries separate, and to create a common lexicon, I would suggest using the terminology "substantial evidence" only with respect to the deferential review of an agency's findings of fact. This position is of course, grounded in section 704. 2 Pa.C.S. § 704 (whether findings of fact are supported by substantial evidence). For review of an agency's legal conclusions, i.e., whether the conclusions are in accordance with law, I would advocate use of the terms articulated in *FOP*. That is review, where appropriate, to determine if the agency's legal conclusions are adequately supported by competent factual findings, are arbitrary and capricious, or constitute an abuse of discretion. *FOP*, 735 A.2d at 99.

without comment. Thus, reversal based upon review for a capricious disregard of the evidence would be an exceedingly rare event.[1]

Finally, I envision reversal for a capricious disregard of evidence to be the exception for an additional reason. The agency's finder of fact is bound by section 422(a) of the Workers' Compensation Act (the "Act"). 77 P.S. § 1 *et seq.* This provision requires, *inter alia,* a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole. Specifically:

> **All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole** which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which he relies and state the reasons for accepting it in conformity with this section. **When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection.**

77 P.S. § 834 (emphasis supplied). Thus, if a workers' compensation judge considers all the evidence offered by the parties, sets forth reasons for making factual determinations, including rational reasons for the rejection of uncontroverted evidence, then it is likely there will be no grounds for an

**4.** It is for this reason that I believe that Chief Justice Zappala's position unnecessarily circumscribes appellate review. I, like the majority, envision a situation in which a tribunal disregards overwhelming evidence of record without comment which, if considered, would command a different result. Without the tool of review for a capricious disregard of the evidence, an appellate court would be limited to a review of whether the affirmative findings of fact made by the judge were supported by the substantial evidence. Consideration of the overwhelming contra-evidence, not found by the agency as facts, would be precluded.

appellate court to overturn his or her legal conclusions on the basis of a capricious disregard of the evidence.

In sum, there is a place for appellate review of whether an agency capriciously disregarded the evidence in reaching its legal conclusions and this review is part of the "in accordance with law" sphere of review. Furthermore, I believe that reversal of an agency's adjudication on this basis must be the rare exception, and will be so, in part, because of the dictates of section 422(a) of the Act.

Justice NIGRO joins this concurring opinion.

MADAME, Justice Newman, concurring.

While I agree with the Majority that a determination of capricious disregard was unwarranted in this case, I write separately to further make it clear that I believe there is no capricious disregard standard of review of agency decisions. The appropriate standard of review in appeals from agency decisions, which has been previously articulated by this Court, is set forth in Section 5 of the Administrative Agency Law, 2 Pa.C.S. § 704. *See, e.g., Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 557 Pa. 586, 735 A.2d 96 (1999) (hereinafter *FOP*); *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). Section 5 of the Administrative Agency Law, 2 Pa.C.S. § 704 (Disposition of Appeal), as indicated by the Majority, states:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, **or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.** If the adjudication is not affirmed, the court may

enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 704 (emphasis added). As expressed in *FOP*, "[The] essential import [of this standard] is to establish limited appellate review of agency conclusions to ensure that they are *adequately supported by competent factual findings,* are free from arbitrary or capricious decision making, and, to the extent relevant, represent a proper exercise of the agency's discretion." *FOP*, 735 A.2d at 99 (emphasis added). As recognized by the majority, inherent as an element of that review process, is an examination of the evidence produced relative to the findings of the WCJ to see whether the WCJ capriciously disregarded competent evidence. It is only in performing a substantial evidence analysis that the appellate court, *inter alia,* looks to see that conclusions are adequately supported, constitutional rights were protected, legal precepts were properly invoked and applied, and factual findings are free from arbitrary or capricious decision making. *FOP.* But the touchstone of any agency adjudication remains that **substantial evidence must support the findings made by the WCJ**.

The Commonwealth Court has developed a line of cases holding that, where the burdened party is the only one to produce evidence and loses before the WCJ, the substantial evidence standard of review is inapplicable because there is no substantial evidence on which to base the findings of the lower tribunal. *See, e.g., Cerasaro v. Workers' Compensation Appeal Board (Pocono Mountain Medical, Ltd.),* 717 A.2d 1111 (Pa.Cmwlth.1998); *CRL of Maryland v. Workmen's Compensation Appeal Board (Hopkins),* 156 Pa.Cmwlth.441, 627 A.2d 1238 (1993); *Butler v. Workmen's Compensation Appeal Board (Commercial Laundry, Inc.),* 67 Pa.Cmwlth.393, 447 A.2d 683 (1982). That court articulated its reasoning as follows:

[W]here the burdened party is the only party to present evidence and does not prevail before the agency, the "substantial evidence" test falters. If no evidence was presented to support the prevailing party, there is no evidence upon

which to apply the "substantial evidence" test; i.e., it is impossible to find substantial evidence to support a position for which no evidence was introduced. In such cases, therefore, the appropriate [standard] of review ... is whether the agency erred as a matter of law or capriciously disregarded competent evidence.

*Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364, 1365 (1988).

The Commonwealth Court's capricious disregard standard represented a departure from previous Commonwealth Court cases that applied the decision of this Court in *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986). In *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987), the Commonwealth Court examined the standard of review articulated in *McGovern*, within the context of whether *one* or *both* parties presented evidence, and reasoned:

Two possible scenarios present themselves when the burdened party fails to prevail: (a) where the evidence of the burdened party, even if believed, and substantially supporting the facts asserted, nonetheless is not sufficient, as a matter of law, to meet the imposed burden, and, (b) where the burdened party does present substantial and sufficient evidence as a matter of law, but the factfinder nonetheless finds against that party.... [T]o prevail, the burdened party must meet both [her] burden of production (*i.e.,* present sufficient evidence) and [her] burden of persuasion (*i.e.,* present credible evidence).... [W]here the burdened party did not prevail before the agency, we must assess whether [her] failure to prevail below is due to: (1) the legal insufficiency of the evidence or, (2) the lack of credibility of the evidence....

*Kirkwood*, 525 A.2d at 844 (footnotes omitted).

This analysis says nothing about a capricious disregard of competent evidence. The review properly focuses on the burdened party and the success or failure of that party to

meet her requisite burden of proof. The Commonwealth Court went on to say:

> When, however, the burdened party did present sufficient evidence as a matter of law and yet failed to prevail below, we then must determine whether the reason for the adverse determination stems from the factfinder's opinion that the evidence presented was not credible, or, whether instead the factfinder committed an error of law in applying the proper principle of law to the facts presented.... If specific credibility determinations appear that support the result of the adjudication, then we may affirm the decision below on the basis that the burdened party failed in [her] burden to persuade the factfinder.

*Id.* (Emphasis omitted.) This appears to articulate a clear understanding of the appropriate standard of review, regardless of whether one party or both parties produce evidence. Thus, where a party, with the burden of proof, is the only party to present evidence and does not prevail, that party has either failed to meet her burden of production or her burden of persuasion. Because a defendant has no burden of production or persuasion, at least until the plaintiff has sufficiently met both of her burdens, the burden of persuasion may not shift to the defendant to produce sufficient credible evidence or lose, before plaintiff has satisfied both those burdens.

The majority cites to *Odgers v. Unemployment Compensation Board of Review,* 514 Pa. 378, 525 A.2d 359 (1987), as a case in which this court emphasized "capricious disregard as applicable to review of agency adjudications unfavorable to the burdened party." (Majority opinion, page 485.) However, a review of *Odgers* indicates that this Court was concentrating on an error of law analysis, rather than one of "capricious disregard." A few months later, this Court issued its opinion in *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works),* 515 Pa. 315, 528 A.2d 580 (1987), one in which the employer presented no witnesses, testimony or other evidence. While indicating that the standard of review had been expressed in varying language, we stated that, "At the very least the findings and conclusions of the fact finder

must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of underlying principles of substantive law to that evidence." *Id.* at 584–85. Barely three years later, this Court, in *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990), relied upon *Odgers* for the proposition that a Section 5, substantial evidence, standard of review was the appropriate standard. Moreover, *Pieper* involved a workers' compensation claim in which the employer presented no medical expert testimony.

A review of the origins of a capricious disregard analysis sheds light, I believe, on the context and manner of its application. In the late 1800s, at least as far as published opinions of that era reveal, cases that were improperly submitted to a jury or in which the jury rendered a judgment that resulted in a judgment *non obstante veredicto* (JNOV), were often reversed by a finding that the jury capriciously disregarded the evidence or lack of evidence in their determinations. This gave rise to the adage that widows and orphans make bad law. *See, i.e., Pennsylvania Railroad Co. v. Beale*, 73 Pa. 504 (1873) (reversing jury award in favor of widow and children of deceased where jury capriciously disregarded the fact that decedent's failure to stop immediately before crossing a railroad track was negligence *per se*); *Pennsylvania Railroad Co. v. Mooney*, 126 Pa. 244, 17 A. 590 (1889) (reversing a judgment of $8,000 for the widow of a man struck and killed by a train where the lower court should have granted a JNOV); *McNeal v. Pittsburgh & W.R. Co.*, 131 Pa. 184, 18 A. 1026 (1890) (reversing jury award of damages for widow and children of man killed in railway crossing accident). In cases such as these, this Court repeatedly said that:

> [W]here the testimony in support of an action is a mere scintilla and that opposed to it so overwhelming that no real controversy is raised, and where the jury **could not find for the plaintiff without a capricious disregard** of apparently truthful testimony, probable in itself and not at variance with any admitted or proved facts, a verdict may be directed for the defendant.

*Cromley v. Pennsylvania R. Co.*, 211 Pa. 429, 60 A. 1007 (1905) (citing *Lonzer v. Lehigh Valley Railroad Co.*, 196 Pa. 610, 46 A. 937 (1900)) (emphasis added). *See also Holland v. Kindregan*, 155 Pa. 156, 25 A. 1077 (1893). The operative word in this analysis is "capricious." The clear meaning of capricious disregard that is gleaned from these early cases is that the fact finder intentionally and willfully overlooked overwhelming controlling law or evidence to the contrary to arrive at its intended result. This is not an application of a standard of review, but a legal conclusion. Moreover, there is no evidence in the matter *sub judice* that the WCJ intentionally overlooked controlling law, or evidence to the contrary, to achieve a desired outcome.

This Court has also said that, "[t]he rule stated in [*Lonzer*], that a verdict may be directed where a different conclusion could not be reached by the jury without a capricious disregard of [facts] ... **does not apply** where there is a **conflict of testimony** ...." *Heh v. Consolidated Gas Co.*, 201 Pa. 443, 50 A. 994, 995 (1902) (emphasis added). In the instant matter, the WCJ determined that the testimony of Claimant was less than credible. Claimant went to work for Wintermyer in 1991 after she was aware that she had CTS. In fact, she informed Wintermyer that she had CTS when she was hired. The determination of the WCJ to deny benefits was a direct result of the testimony of Employer's witnesses as to the repetitive task requirements of Claimant's job and went directly to the work-relatedness of the injury. The WCJ is not bound to believe every story that a witness or witnesses willingly swears to, simply because no other witness contradicts it. Having discredited Claimant's testimony concerning the causation of her underlying CTS and its direct relationship to her job, as well as other important aspects of her testimony, the WCJ discredited the testimony of Dr. Yates because Dr. Yates' opinion that Claimant's CTS was a work-related injury was based entirely upon the discredited testimony of Claimant. The WCJ did **not** discredit the testimony of Dr. Yates because it was equivocal. The sole issue here was credibility, not unequivocality

I would reiterate that this Court has rejected the "capricious disregard" standard as applied by the Commonwealth Court beginning with *McGovern* and continuing to the present, even where only one party produced evidence. Moreover, it must be remembered that the defendant is not required to produce any evidence, including medical evidence, because it bears no burden of proof. Our workers' compensation jurisprudence has not held that, irrespective of the credibility determinations of the lay witnesses and of the claimant, if a physician testifies that the claimant was injured at work, then, despite a lack of factual foundation for that testimony, the testimony of the physician must be accepted and the claim granted. In the instant matter, the decision of the Commonwealth Court and the Board would set an untenable precedent of requiring the production of medical testimony by the defense or face the imposition of liability. Regardless of how many parties present evidence, the WCJ must issue findings of fact. It is these findings of fact that must be supported by substantial evidence, whether or not the evidence is controverted. If the findings of fact that are necessary to support an adjudication are supported by substantial evidence in the record, then the adjudication will be supported by substantial evidence, even if that evidence demonstrates that the party with the burden of proof has failed to carry its burden.

Substantial evidence can support a negative finding by a tribunal charged with deciding the outcome of a particular cause of action. **Insufficient** evidence presented by the burdened party is ascertainable and provides substantial evidence to support a finding that the plaintiff failed to carry his or her burden of production and the plaintiff's case has failed. **Sufficient** evidence presented by the burdened party that is not credited by the fact finder is also ascertainable and provides substantial evidence that the burdened party has failed to sustain his or her burden of persuasion. When the Commonwealth Court opined that, where "no evidence was presented to support the prevailing party, there is no evidence upon which to apply the 'substantial evidence' test," *Russell*, 550 A.2d at 1365, the focus of the court's review was misdirected.

That is because a capricious disregard analysis shifts the focus to the actions of the fact finder, rather than remain attentive to the sufficiency or credibility of the evidence presented. As the majority discerns, a capricious disregard analysis is an "appropriate component" of appellate consideration when undertaking a review pursuant to the substantial evidence standard of review. But it is only a mechanism to facilitate review. Because the capricious disregard analysis is applied to the findings of fact, credibility determinations and evidentiary weight of the proceedings at issue, it is not a standard of review but a tool to be utilized in determining that substantial evidence supports the ultimate determination. The substantial evidence standard is set forth in Section 5 of the Administrative Agency Law, 2 Pa.C.S. § 704 and that is the standard we must apply.