# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| OWPH Devco, LLC, | : | **CASES CONSOLIDATED** |
| Appellant | : | |
| | : | Nos. 112 - 116 C.D. 2025 |
| v. | : | |
| | : | Argued: November 6, 2025 |
| Zoning Hearing Board of the | : | |
| Municipality of Monroeville and | : | |
| Municipality of Monroeville | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                      HONORABLE PATRICIA A. McCULLOUGH, Judge
                      HONORABLE LORI A. DUMAS, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                    **FILED:  December 8, 2025**

In these consolidated appeals, OWPH Devco, LLC (OWPH) appeals from the orders entered by the Court of Common Pleas of Allegheny County (trial court), which affirmed five related decisions of the Zoning Hearing Board (Board) of the Municipality of Monroeville, Pennsylvania.  OWPH contends that the trial court erred by affirming the Board's denial of its applications for dimensional variances under Monroeville's zoning ordinance.[1]  We affirm.

## I. BACKGROUND[2]

OWPH applied for five dimensional variances to build a 672-square-

---

[1] Monroeville Zoning Ordinance (Zoning Ordinance), adopted Dec. 11, 1984 (Ord. No. 1443).

[2] "Generally, when we state the facts, we view the record in the light most favorable to the prevailing party, including the benefit of all logical and reasonable inferences, unless we determine that material findings of fact are unsupported by substantial evidence of record." *Four Seasons*

foot, two-sided billboard on a vacant parcel, which the parties refer to as the "West Property," in between two routes (a modern interstate highway, Interstate 376, and its predecessor, known as Old William Penn Highway). The West Property is irregularly shaped, approximately 600 feet long and 100 feet wide, steeply sloped, and divided by a stream. The Board held several hearings on August 2, 2023, September 6, 2023, and October 4, 2023. At the close of the September meeting, the solicitor stated, "We are going to keep the record open until [next] month." Notes of Testimony (N.T.), 9/6/23, at 98. OWPH's counsel did not object to the solicitor's proposal. *See id.*

At those hearings, OWPH called several witnesses, including Michael Tantala, Andrew Schwartz, and Patrick Wolfington. The Board called Paul Whealdon as a witness at the October hearing. N.T., 10/4/23, at 14. OWPH did not object to Whealdon's testimony and cross-examined Whealdon. We detail their testimony below.

At the end of the October 4th hearing, the Board unanimously closed the record. *Id.* at 29 (stating "testimony now in this matter is closed"). Because one of the Board members was absent, the Board scheduled its decision on OWPH's application for the November meeting. Prior to the November meeting, OWPH requested that the Board defer its decision until the December meeting. N.T., 11/1/23, at 6. OWPH was not present at the November meeting when the Board agreed to OWPH's continuance.[3] *Id.* At the December meeting, the Board denied OWPH's

---

*Logging, LLC v. Dep't of Lab. & Indus.*, 308 A.3d 345, 347 n.2 (Pa. Cmwlth. 2024) (citation omitted); *see Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 486-87 (Pa. 2002) (*Wintermyer*). We cite to the record docketed at 115 C.D. 2025, which is the lead consolidated case.

[3] The solicitor noted the presence of residents who wished to testify regarding OWPH's application but advised against permitting their testimony because the record was closed. *See* N.T., 11/1/23, at 7. The solicitor added, "I don't think it is fair to [OWPH] if they are not here that people

applications and mailed out five single-page decisions (one for each variance).

OWPH timely appealed to the trial court, and the Board filed its findings of fact and conclusions of law. In relevant part, the Board was persuaded by the testimony of Whealdon and did not believe the testimony presented by OWPH. *See* Bd.'s Findings of Fact & Conclusions of Law, 1/18/24, at 4-5. The trial court took no new evidence and affirmed.

Initially, the court rejected some of the Board's findings of fact as unsupported by substantial evidence. Trial Ct. Op., 12/30/24, at 6-7. However, the court agreed with the Board's rejection of OWPH's evidence that the property could not be developed in strict conformity with the zoning ordinance. *Id.* at 7-8. In support, the court summarized the testimony of both parties' witnesses. *Id.* The court concluded that OWPH failed to overcome the evidence that "a smaller billboard can be constructed on the property or face a different direction." *Id.* at 10 (citation modified). OWPH timely appealed, and the trial court did not order a Pa.R.A.P. 1925(b) statement.

## II. ISSUES[4]

OWPH raises two issues. First, OWPH contends that the Board erred by denying its "requested variances in connection with a permitted billboard" on essentially two grounds: OWPH proved (1) the property cannot be developed in strict conformity with the ordinance; and (2) unnecessary hardship. OWPH's Br. at i, 5. Second, OWPH asserts that the Board erred by holding that the requested variances would "alter the essential character of the neighborhood, substantially or

would get up and testify about the matter." *Id.* at 8. The Board nevertheless proceeded without OWPH's presence and permitted attendees to make unsworn statements. *Id.* at 9-15. We resolve this below.

[4] OWPH's brief identifies two issues in its statement of questions but divides its argument into four parts. OWPH's Br. at i; *see generally* Pa.R.A.P. 2119 (requiring the argument section of the brief to be "divided into as many parts as there are questions to be argued").

3

permanently impair the use of adjacent property[,] or be detrimental to the public welfare[.]" *Id.* at 5.

### III. DISCUSSION[5]

*1. Arguments*

In support of its first issue, specifically the "strict conformity" grounds, OWPH argues that the property can only be used for a billboard facing the interstate highway. OWPH's Br. at 29-31. In its view, a smaller billboard would not be financially viable. *Id.* at 31-34. Moreover, according to OWPH, the trial court "wrongly affirmed" the Board's decision based on Whealdon's testimony, which was presented after the record was closed. *Id.* at 34-36. OWPH emphasizes their witnesses' testimony that no billboard could be built that strictly conformed with the ordinance. *Id.* at 35 ("There is no substantial evidence to support the assertion that a billboard . . . can be developed on the . . . property in strict conformity with the zoning ordinance . . . ."). OWPH assails contradictory testimony presented by the Board's witness as "flawed" and "refuted" by OWPH's own evidence. *Id.* at 36. Per OWPH, it could not build a conforming billboard without variances. *Id.* at 36-39.

OWPH also assails the Board's credibility findings as "untenable." *Id.*

---

[5] "Where a court of common pleas takes no additional evidence in reviewing a land use appeal determination by a zoning hearing board, this Court's . . . review is limited to determining whether the local governing body that issued the challenged decision abused its discretion or committed an error of law." *In re City Turf Club Op Co.*, 308 A.3d 351, 357 (Pa. Cmwlth. 2024) (*Turf*). "Local governing bodies abuse their discretion by making factual findings that are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified); *see also* 2 Pa.C.S. § 754. "Assuming the record contains substantial evidence, we are bound by the [Board's] findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence. A zoning board may reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness." *In re AZ Broad St. LLC* (Pa. Cmwlth., No. 1354 C.D. 2021, filed Jan. 22, 2024), 2024 WL 222516, *2 n.9 (citation modified) (*AZ*); *see generally Wintermyer*, 812 A.2d at 484. We may conditionally cite unreported decisions of this Court. Pa.R.A.P. 126(b).

4

at 45. In support, OWPH begins with the Board's conclusion that OWPH failed to present evidence that a billboard that conformed to the ordinance could not be built. *Id.* at 46. OWPH disagrees, citing to testimony that OWPH construes as establishing that building a billboard aimed at the Old William Penn Highway was economically impractical, would require greater variance relief, and was unsafe. *Id.* at 46-47 (arguing that its witnesses "testified that a billboard constructed along the West Property's Old William Penn Highway frontage, especially one built in conformity with the Zoning Ordinance, would be essentially useless as it would be virtually invisible" (citations omitted)). OWPH also argues that the record was closed after the September meeting, and thus Whealdon could not testify for the Board at the October meeting. *Id.* at 35.[6]

The Board counters that OWPH did not challenge testimony from Whealdon that OWPH could erect billboards in strict conformity with the ordinance. Bd.'s Br. at 18 (citing N.T., 10/4/23, at 15-20, for the proposition that a visible billboard could be built facing Old William Penn Highway).

### 2. Legal Standards

To obtain a variance, an applicant must satisfy five criteria under Monroeville's zoning ordinance.[7] Zoning Ordinance § 359-48.E; *accord* Section

---

[6] OWPH additionally argues that "an applicant for dimensional variances is not required to show that a property cannot be used for any other permitted purpose in order to prove *unnecessary hardship*." OWPH's Br. at 37 (emphasis added) (discussing *Marshall v. City of Phila.*, 97 A.3d 323 (Pa. 2014)). We address this argument and detail the testimony of the witnesses below.

[7] Because Monroeville subsequently amended its ordinance during this appeal, we reproduce the ordinance at issue:

> 1. There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and the unnecessary hardship is due to the conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.

910.2 of the Municipalities Planning Code (MPC),[8] added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a)(1)-(5). Courts often restate the five criteria as four elements: the applicant must prove (1) an unnecessary hardship caused by the property and not created by the applicant; (2) the variance is needed for reasonable use of the property, *i.e.*, the property cannot be developed without the variance; (3) the variance would not alter the character of the neighborhood or harm the public welfare; and (4) the variance is the minimum required. *See, e.g.*, *Larsen v. Zoning Bd. of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996).

There are two types of variances: use and dimensional. A use variance "involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). A dimensional variance is "a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Id.* (discussing *O'Neill v. Zoning Bd. of Adjustment of Phila. Cnty.*, 254 A.2d 12 (Pa. 1969)).

Because a dimensional variance is considered "of lesser moment" than a use variance, *Hertzberg* held that a lesser "quantum of proof" is needed to prove

---

2. Because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
3. Such unnecessary hardship has not been created by the appellant.
4. The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located nor substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.
5. The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Zoning Ordinance § 359-48.E.

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

6

the unnecessary hardship element. *Id.* at 47-48 (declaring "that the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought"). The applicant may prove unnecessary hardship with evidence that "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed to a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance." *Metal Green v. City of Phila.*, 266 A.3d 495, 509 (Pa. 2021) (plurality) (summarizing *Hertzberg*).

*Hertzberg*'s "sole focus was on the unnecessary hardship requirement" and not on other factors, such as whether the requested "variance was the minimum variance that would afford relief and was the least modification of the ordinance." *Id.* Nevertheless, "an applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (*Landfill*) (citation modified). When an applicant has not shown hardship, "or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." *Id.* (citation omitted); *accord Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011) (same).[9]

___

[9] Since "*Hertzberg*, we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes*, so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses." *Singer*, 29 A.3d at 149 (emphases in original) (citation omitted).

In addition to unnecessary hardship, the ordinance lists other conditions for a variance, including whether the property cannot "be developed in strict conformity" with the ordinance and whether the proposed variance would "be detrimental to the public welfare," *e.g.*, be unsafe. *See* Zoning Ordinance § 359-48.E(2), (4). Courts have consistently required applicants to prove all variance elements.

For example, our Supreme Court reversed the grant of a dimensional variance, in which the applicant failed to prove that the property could not be used profitably for any permitted purpose under the ordinance. *O'Neill*, 254 A.2d at 15-16. The applicant owned a parking lot, and he applied for a variance to build a 26-story apartment building because the ordinance limited the maximum height to 12 stories.[10] *Id.* at 14. The board granted the variance. *Id.* It was "not disputed" that the applicant could not "profitably build and operate an apartment building of less than twenty-six floors on this site." *Id.* at 15 (citation modified).

Nevertheless, *O'Neill* reversed on two grounds. *Id.* First, the applicant "failed to prove that the property cannot continue to be utilized profitably in its present state as a" parking lot. *Id.* Second, the applicant failed to prove "the property could not profitably be used for some purpose which comports with the zoning requirements." *Id.* The applicant, per *O'Neill*, failed to present any evidence "that the property" could not be "profitably used in some fashion which" did not violate the ordinance. *Id.* at 16. "The fact that one particular project may not be financially feasible under the ordinance [was] not determinative." *Id.* It was not determinative because the applicant failed to present "evidence that the property cannot be profitably used within the present space requirements," *i.e.*, the applicant had to

_____

[10] The ordinance limited building size to a maximum of 84,646 square feet, which was roughly "ten to twelve floors." *O'Neill*, 254 A.2d at 14.

prove the current use as a parking lot could not be profitable under the ordinance.[11] *Id.*

This Court applied the same principle in resolving the applicant's dimensional variance to build a six-story motel—a permitted use—in which the ordinance limited the height to two stories. *Johnson v. Zoning Hr'g Bd. of Richland Twp.*, 503 A.2d 1117, 1118 (Pa. Cmwlth. 1986). The board granted the variance, reasoning that the property's "unique topography" made "the construction of an economically feasible two-story permitted structure virtually impossible, although theoretically physically possible."[12] *Id.* The board thus granted the variance, the trial court affirmed, and this Court reversed. *Id.* at 1119. *Johnson* reversed because the applicant did not present any evidence as to "why the property cannot be used for other purposes permitted by the ordinance." *Id.*

### 3. Discussion

As stated herein, OWPH suggests that its witnesses "testified that a billboard constructed along the West Property's Old William Penn Highway frontage, especially one built in conformity with the Zoning Ordinance, would be essentially useless as it would be virtually invisible," *i.e.*, economically unviable. *See* OWPH's Br. at 46-47 (citing N.T., 8/2/23, at 61-62, 83; N.T., 9/6/23, at 12-13, 16, 20, 46, 53). The cited testimony, however, does not support OWPH's characterization of its witnesses' testimonies.

---

[11] Additionally, the *O'Neill* Court observed that a variance permitting a 26-story apartment building was "more than a mere technical and superficial deviation from the" ordinance's dimensional requirements. *O'Neill*, 254 A.2d at 16 (suggesting that the applicant should request "a rezoning and not a variance").

[12] Specifically: the "storm water drainage problems and the severe slope of the tract make the construction of an economically feasible two-story permitted structure virtually impossible, although theoretically physically possible, and therefore greatly distresses the value of the subject tract." *Johnson*, 503 A.2d at 1118.

For example, Tantala testified that a billboard facing the interstate could not be 150 square feet for safety reasons. N.T., 8/2/23, at 61-62.[13] Similarly, Schwartz testified that a conforming billboard would not be visible. *Id.* at 83. Although Schwartz did not specify which direction the billboard would face, his subsequent testimony makes clear he was discussing a billboard facing the interstate highway. *See id.*; *accord* N.T., 9/6/23, at 12-13 (reflecting Schwartz's testimony that without the variance, the billboard would be too low to be visible from the interstate due to a PennDOT-owned hill), 16 (discussing the need to have the height variance in order to make the billboard visible, presumably to interstate motorists), 20 (same). Wolfington testified generally that billboards need to be visible to be economically viable. N.T., 9/6/23, at 46, 53.[14]

Additionally, the record reflects that OWPH's witnesses acknowledged

_____

[13] OWPH's brief states that "Tantala expressly stated he would have safety concerns with a 150 square-foot billboard being constructed anywhere on the Property." OWPH's Br. at 47 (citing N.T., 8/2/23, at 61-62). At the cited pages, Tantala was responding to a question about whether safety concerns existed about building a 150-square-foot billboard "at that location." N.T., 8/2/23, at 61. Tantala responded, in part: "The drivers are traveling well above the posted speed limit in this location it [sic] would raise safety concerns which is why PennDOT itself permits up to 1200 square feet for a sign for speeds and number of lanes along these interstates. Interstates have higher speeds, more traffic, more lanes. It translates into allowing and permitting larger signs that are appropriate for the approach distances, time, and all those things." *Id.* at 61-62. We reasonably construe Tantala's testimony as referring to a billboard facing the interstate—not Old William Penn Highway. *See id.*

[14] OWPH also referenced testimony that a 150-square-foot billboard was not economically viable in contrast to the proposed 672-square-foot billboard. OWPH's Br. at 32-33 (citing N.T., 9/6/23, at 30-32, 34-35, 39, 41, 48, 52-53, 56). In context, the cited testimony addressed the economic viability of a 672-square-foot billboard on the "area to build" and "this specific site," which faced a "limited access highway[]" *i.e.*, the interstate, where the average speed was 70 mph and PennDOT regulations applied for billboards. Plainly, the testimony addressed the variances needed for an interstate-facing billboard. *See id.*; *see also* N.T., 10/4/23, at 42 (reflecting testimony that a 150-square-foot billboard facing the interstate would not be profitable), 54 (same). While OWPH presented extensive testimony about an economically viable billboard at the proposed interstate-facing location, it presented little explicit testimony about whether a conforming billboard facing Old William Penn Highway would be economically viable.

multiple potential development areas on the West Property. Exhibit West-6 depicted "a number of areas in white that are available areas for consideration," including eight potential areas of development. N.T., 8/2/23, at 27; Ex. West-6 (referencing the eight areas, including a 263-square-foot area located on the northeast corner fronting Old William Penn Highway). The witnesses testified that of those eight areas, the only viable spot was the disputed interstate-facing location. *See, e.g.*, N.T., 8/2/23, at 78, 83 (acknowledging that a conforming billboard could be built but would be impractical: "Yeah, you could build a billboard and I think the caveat was to the standards of the municipality as [the ordinance] is drafted today"). OWPH agreed that a conforming billboard could be built at the interstate-facing location but did not recommend it because the billboard's smaller size was problematic. *See id.* at 59-60.

Balanced against this testimony, Whealdon countered that the parcels at issue "have frontage on Old William Penn and they could construct a visible, conforming billboard or billboards that face Old William and not the" interstate. N.T., 10/4/23, at 15-16. OWPH did not object to Whealdon's testimony and, in fact, cross-examined Whealdon about the West (and East) Properties. *Id.* at 24.

OWPH's testimony thus establishes, at best, the following: among the available areas on the property, only one interstate-facing location would support an economically viable billboard and that a 150-square-foot billboard at that location was not economically viable. But *O'Neill* and *Johnson* require the applicant to prove that the property cannot profitably be used for any purpose that conforms with the ordinance. *O'Neill*, 254 A.2d at 15-16; *Johnson*, 503 A.2d at 1119. Like the *O'Neill* applicant who wanted to build a 26-story apartment building when the ordinance permitted only 10 to 12 stories, OWPH sought to build a 672-square-foot billboard

11

facing the interstate when the ordinance permitted only a 150-square-foot billboard. *See O'Neill*, 254 A.2d at 14. Similar to the *Johnson* applicant who wanted to build a six-story building because a conforming building was not economically viable, OWPH also failed to present evidence as to "why the property cannot be used for other purposes permitted by the ordinance," *e.g.*, a billboard facing Old William Penn Highway. *See Johnson*, 503 A.2d at 1118-19.

So there is no misunderstanding, OWPH presented affirmative testimony that the only economically viable billboard location was the disputed interstate-facing site. OWPH characterizes this affirmative testimony as necessarily implying a negative conclusion: a conforming billboard facing Old William Penn Highway was not economically viable. OWPH, however, presented little explicit testimony addressing the economic viability of a conforming billboard specifically facing Old William Penn Highway.[15]

Nevertheless, even if we accepted OWPH's characterization of its witnesses' testimonies, Whealdon testified to the contrary at the October hearing: he testified that a conforming billboard facing Old William Penn Highway could be built. *See* N.T., 10/4/23, at 15-16 (agreeing with counsel's questions that a "conforming billboard" "visible from Old William Penn" Highway could be built). To the extent OWPH's and Whealdon's testimony conflicted, the Board evidently credited Whealdon's testimony over OWPH's testimony. *See AZ*, 2024 WL 222516, at *2 n.9. In our appellate role, we cannot reweigh credibility in evaluating conflicting testimony. *See id.* But even if Monroeville had presented no contrary testimony, the Board could have rejected OWPH's expert testimony as not credible.

---

[15] Again, so there is no confusion, OWPH presented extensive testimony and evidence, including speed and crash studies in support of its variance applications for an interstate-facing billboard. OWPH's position was that an economically viable billboard must face the interstate.

12

*See id.*[16]

Because OWPH failed to prove one of the elements needed for a variance—that the property cannot be developed without the variance—we need not address its other arguments. *See Turf*, 308 A.3d at 357; *Landfill*, 83 A.3d at 520. For example, OWPH argues that the trial court misconstrued *Marshall*, which addressed unnecessary hardship. *See* OWPH's Br. at 37-38; *Marshall*, 97 A.3d at 332 (rejecting this Court's "articulation of a 'functionally obsolete' standard for *unnecessary hardship* [as] unsupported" by precedent, and noting that the applicant "grounded its *unnecessary hardship* argument on its assertion that the property could be conformed for a permitted use only at a prohibitive expense" (emphases added)). *Marshall* does not relieve OWPH of its burden to prove that no conforming structure can be built on the property. Because we affirm the Board based on its determination of a different factor, *i.e.*, whether the property can be developed in strict conformity with the ordinance, we need not address any error in applying the unnecessary hardship factor.[17] *See Landfill*, 83 A.3d at 520.

In sum, OWPH's evidence suffers from the same flaw identified in

---

[16] We note that OWPH's suggestion that the record was closed in September finds no support in the record. Rather, at the close of the September meeting, the solicitor stated, "We are going to keep the record open until [next] month." N.T., 9/6/23, at 98. OWPH's counsel did not object. *See id.*; *cf.* OWPH's Br. at 19 (citing to counsels' discussion at the September meeting that OWPH had rested with respect to its applications for variances for the West Property), 35. Further, OWPH did not object to Whealdon testifying and, in fact, cross-examined him about the West Property. N.T., 10/4/23, at 24-25. For these reasons, we defer to the Board's crediting of Whealdon's testimony. *See Wintermyer*, 812 A.2d at 484.

[17] The trial court also noted that the Board concluded that the billboard would negatively affect the character of the neighborhood. Trial Ct. Op. at 9 (citing, *inter alia*, comments by purported residents at the November 1, 2023 meeting). However, because OWPH was not present (because the Board closed the record at the October meeting), the Board erred in relying on those comments. On this record, the Board's error was not reversible error because OWPH failed to establish error with respect to proving the property could not be used in strict conformity with the ordinance.

*O'Neill* and *Johnson*: it only demonstrated that a larger billboard facing the interstate would be economically viable. However, that alone does not establish that a smaller, conforming 150-square-foot billboard facing Old William Penn Highway would be economically unviable, nor did the evidence establish that the property cannot be used for some other permitted purposes.

## IV. CONCLUSION

For these reasons, we affirm the trial court's orders affirming the Board's determinations.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

OWPH Devco, LLC,
               Appellant

          v.

Zoning Hearing Board of the
Municipality of Monroeville and
Municipality of Monroeville

:   **CASES CONSOLIDATED**
:
:   Nos. 112 - 116 C.D. 2025
:
:
:
:
:
:

## **O R D E R**

AND NOW, this 8th day of December, 2025, we AFFIRM the orders entered on December 30, 2024, by the Court of Common Pleas of Allegheny County, which affirmed the five decisions of the Zoning Hearing Board of the Municipality of Monroeville, Pennsylvania.

_____
**LORI A. DUMAS, Judge**